IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | |
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.08-cv-4070 (SCR) |
| | : | |
| v. | : | ECF Case |
| | : | |
| ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC; ENTERTAINMENT DISTRIBUTION COMPANY; UNIVERSAL MUSIC GROUP, INC.; UMG MANUFACTURING & LOGISTICS, INC.; JAMES CAPARRO, an Individual; JORDAN COPLAND, an Individual; and John Does No. 1 through 100, | : | **ANSWER AND COUNTERCLAIM OF ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC, ENTERTAINMENT DISTRIBUTION COMPANY, JAMES CAPARRO, AND JORDAN COPLAND** |
| Defendants and Counterclaim Plaintiffs. | : | |

Defendants Entertainment Distribution Company (USA) LLC ("EDS LLC") and Entertainment Distribution Company ("EDC") (collectively the "EDC Defendants"); James Caparro ("Caparro"); and Jordan Copland ("Copland"), all of whom are sometimes collectively referred to as the "Defendants," hereby respond to the First Amended Complaint by Koninklijke Philips Electronics N.V. ("Philips N.V.") and U.S. Philips Corporation ("U.S. Philips") (collectively referred to as "Philips") by and through their counsel as follows:

1.     The allegations contained in Paragraph 1 appear to characterize the nature of this case. To the extent a response is required, Defendants deny the allegations contained in Paragraph 1.

## THE PARTIES

2.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2, and, therefore, deny them.

3.      EDC LLC admits the allegations contained in Paragraph 3.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3, and, therefore, deny them.

4.      EDC admits the allegations contained in Paragraph 4.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4, and, therefore, deny them.

5.      Defendants admit the allegations contained in Paragraph 5.

6.      Defendants admit the allegations contained in Paragraph 6.

7.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7, and, therefore, deny them.

8.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and, therefore, deny them.

9.      Defendants deny the allegations contained in Paragraph 9.

10.      Defendants admit that Philips has elected to so classify the companies in the complaint.

11.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11, and, therefore, deny them.

## JURISDICTION AND VENUE

12.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12, and, therefore, deny them.

13.    The allegations contained in Paragraph 13 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 13.

14.    The allegations contained in Paragraph 14 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 14.

15.    Defendants deny the allegations contained in Paragraph 15.

16.    Defendants admit the allegations contained in Paragraph 16.

17.    Mr. Caparro denies the allegations contained in Paragraph 17.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17, and, therefore, deny them.

18.    Defendants admit the allegations contained in Paragraph 18.

19.    Mr. Copland denies the allegations contained in Paragraph 19.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 19, and, therefore, deny them.

20.    Defendants deny the allegations contained in Paragraph 20.

21.    Defendants deny the allegations contained in Paragraph 21.

22.    Defendants deny the allegations contained in Paragraph 22.

## FACTS RELATED TO PHILIPS

23.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 and, therefore, deny them.

24.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 and, therefore, deny them.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 and, therefore, deny them.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 and, therefore, deny them.

27.     Defendants admit that Philips has elected to so classify the systems in the complaint.

28.     Defendants admit Exhibit A to the Amended Complaint is a purported copy of the '846 patent but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 and, therefore, deny them, and specifically deny that the '846 was duly and legally issued after full and fair examination or that it is valid and subsisting.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 and, therefore, deny them.

## FACTS RELATED TO THE REPLICATOR DEFENDANTS

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30, and, therefore, deny them.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31, and, therefore, deny them.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32, and, therefore, deny them.

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33, and, therefore, deny them.

34.     Defendants deny the allegations contained in numbered Paragraph 34.

35.    Defendants admit that EDC acquired some CD-Disc manufacturing operations of UMGML, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 35, and, therefore, deny them.

36.    Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 36.

37.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, and, therefore, deny them.

38.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38, and, therefore, deny them.

39.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 39, and, therefore, deny them.

40.    Defendants state that the referenced Agreement speaks for itself, and deny the remaining allegations contained in Paragraph 40.

41.    Defendants state that the referenced Agreement speaks for itself, and deny the remaining allegations contained in Paragraph 41.

42.    Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 42.

43.    Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 43.

44.    Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 44.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 44, and, therefore, deny them.

45.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 and, therefore, deny them.

46.     Defendants deny the allegations contained in Paragraph 46.

47.     Defendants admit that the EDC Defendants have made payments to Philips, but deny the remaining allegations contained in Paragraph 47.

48.     Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 48.

49.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 49, and, therefore, deny them.

50.     Defendants deny the allegations contained in Paragraph 50.

51.     Defendants state that the referenced Agreement speaks for itself, and deny the remaining allegations contained in Paragraph 51.

52.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52, and, therefore, deny them.

53.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 53, and, therefore, deny them.

54.     Defendants state that the referenced Agreement speaks for itself, and deny the remaining allegations contained in Paragraph 54.

55.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55, and, therefore, deny them.

56.     Defendants state that the referenced Agreement speaks for itself, and deny the remaining allegations contained in Paragraph 56.

57.     Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 57.

58.     Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 58.

### FACTS RELATING TO BREACH OF CONTRACT CLAIM

59.     Defendants deny the allegations contained in Paragraph 59.

60.     Defendants deny the allegations contained in Paragraph 60.

61.     Defendants deny the allegations contained in Paragraph 61.

62.     Defendants admit that EDC LLC and EDC have made payments to Philips, but deny the remaining allegations contained in Paragraph 62.

63.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63, and, therefore, deny them.

64.     Defendants admit that EDC has made payments to Philips, but deny the remaining allegations contained in Paragraph 64.

65.     Defendants deny the allegations contained in Paragraph 65.

66.     Defendants deny the allegations contained in Paragraph 66.

67.     Defendants admit that CD-Discs they make are sold in the United States but deny the remaining allegations contained in Paragraph 67.

68.     Defendants deny the allegations contained in Paragraph 68.

69.     Defendants deny the allegations contained in Paragraph 69.

### FACTS RELATING TO PATENT INFRINGEMENT CLAIM

70.     Defendants deny the allegations contained in Paragraph 70.

71.     The allegations contained in Paragraph 71 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 71.

72.     The allegations contained in Paragraph 72 are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 72.

73.     Defendants deny the allegations contained in Paragraph 73.

74.     Defendants deny the allegations contained in Paragraph 74.

75.     Mr. Caparro denies the allegations contained in Paragraph 75.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75, and, therefore, deny them.

76.     Mr. Caparro denies the allegations contained in Paragraph 76.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 76, and, therefore, deny them.

77.     Mr. Copland denies the allegations contained in Paragraph 77.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77, and, therefore, deny them.

78.     Mr. Copland denies the allegations contained in Paragraph 78.  The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 78, and, therefore, deny them.

79.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79, and, therefore, deny them.

## COUNT I
## __BREACH OF CONTRACT__

80.     Defendants repeat and reassert all responses to Paragraphs 1 through 79 as if they were stated in full herein.

81.     The allegations contained in Paragraph 81 are legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations contained in Paragraph 81.

82.     The allegations contained in Paragraph 82 are legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations contained in Paragraph 82.

83.     Defendants deny the allegations contained in Paragraph 83.

84.     Messrs. Caparro and Copland deny the allegations contained in Paragraph 84. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84, and, therefore, deny them.

85.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 85, and, therefore, deny them.

86.     Defendants deny the allegations contained in Paragraph 86.

87.     Defendants deny the allegations contained in Paragraph 87.

88.     Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 88.

89.     Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 89.

90.     Defendants state that the referenced Agreements speak for themselves, and deny the remaining allegations contained in Paragraph 90.

91.      Defendants deny the allegations contained in Paragraph 91.

92.      Messrs. Caparro and Copland deny the allegations contained in Paragraph 92. The remaining Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 92, and, therefore, deny them.

## COUNT II
## PATENT INFRINGEMENT

93.      Defendants repeat and reassert all responses to Paragraphs 1 through 92 as if they were stated in full herein.

94.      Defendants deny the allegations contained in Paragraph 94.

95.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95, and, therefore deny them.

96.      The allegations contained in Paragraph 96 are legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the allegations contained in Paragraph 96.

97.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 97, and, therefore deny them.

98.      Defendants admit that public records show that a Reexamination Request for the '846 patent was filed in the Patent Office on December 8, 2004 and that Exhibit F to the Amended Complaint purports to be a copy of a Reexamination Certificate but denies the allegations contained in Paragraph 98.

99.      Defendants deny the allegations contained in Paragraph 99.

100.      Defendants deny the allegations contained in Paragraph 100.

101.      Defendants deny the allegations contained in Paragraph 101.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Defendants have not directly or contributorily infringed any claim of the patent-in-suit, nor have they induced others to infringe the patent-in-suit.

### SECOND AFFIRMATIVE DEFENSE

The patent-in-suit is unenforceable due to Philips' patent misuse, prosecution laches, and inequitable conduct, namely, Philips' intentional failure to timely inform the Patent Examiner of material prior art and other information known to Philips, including by Philips abandoning an allowed patent application in favor of a continuing patent application with the same claims, and by Philips submitting prior art in a reexamination proceeding in a manner ensuring that the Patent Office would not consider it on the merits.

### THIRD AFFIRMATIVE DEFENSE

The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by the doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by estoppel.

### SEVENTH AFFIRMATIVE DEFENSE

The claims asserted by plaintiffs are barred by waiver.

### EIGHTH AFFIRMATIVE DEFENSE

If plaintiffs suffered damages as alleged, plaintiffs failed to mitigate such damages.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff U.S. Philips Corporation lacks standing to assert breach of contract claims because it is not the licensing entity, and plaintiff Koninklijke Philips Electronics N.V. lacks standing to assert patent infringement or contract claims under the '846 patent because it does not own the licensed patent and is not an exclusive licensee thereof.

### TENTH AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim on which relief may be granted.

### ELEVENTH AFFIRMATIVE DEFENSE

Philips is estopped to construe the claims of the '846 Patent to cover any products made, used, sold, offered for sale or imported by Defendants because of statements, amendments, or actions taken during the prosecution of the '846 Patent.

### TWELVTH AFFIRMATIVE DEFENSE

The claims of the '846 Patent cannot be construed to cover any product made, used, sold, offered for sale or imported by Defendants and avoid the prior art.

### THIRTEENTH AFFIRMATIVE DEFENSE

Philips is not entitled to an injunction or any other equitable remedy because it has an adequate remedy at law.

### FOURTEENTH AFFIRMATIVE DEFENSE

Philips' causes of action and claims for damages and other relief are barred, in whole or in part, by applicable contractual and statutory limitations periods.

## COUNTERCLAIMS

Defendants counterclaim against Philips as follows:

## EXISTENCE OF ACTUAL CONTROVERSY

1.      These counterclaims arise under the Declaratory Judgment Act, 28 U.S.C.

§§2201(a) and 2202.

2.      An actual justiciable controversy, as set forth in this counterclaim, exists between

Defendants and Philips concerning the validity, enforceability and infringement of the patent-in-

suit.

## THE PARTIES

3.      Plaintiff-in-Counterclaim, Entertainment Distribution Company (USA) LLC

("EDC LLC") is a limited liability company organized under the laws of Delaware with a place

of business at 825 8th Avenue, New York, New York.

4.      Plaintiff-in-Counterclaim, Entertainment Distribution Company ("EDC") is a

company organized under the laws of Delaware with a place of business at Kings Mountain,

Grover, North Carolina.

5.      EDC LLC and EDC are collectively referred to as Plaintiffs-in-Counterclaim.

6.      Upon information and belief, Defendant-in-Counterclaim Koninklijke Philips

Electronics N.V. is a corporation organized under the laws of The Netherlands with a place of

business in Amsterdam, the Netherlands.

7.      Upon information and belief, Defendant-in-Counterclaim U.S. Philips

Corporation is a corporation organized under the laws of Delaware with places of business at

1251 Avenue of the Americas, New York, New York, and at 345 Scarborough Rd., Briarcliff

Manor, New York.  Defendants-in-Counterclaim Koninklijke Philips Electronics N.V. and U.S. Philips Corporation are collectively referred to as "Philips."

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over Plaintiffs-in-Counterclaim and Philips, and over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338, 2201 and 2202 and under the doctrines of pendent and supplemental jurisdiction.

9.      By filing its Complaint, Philips has consented to the personal jurisdiction of this Court.

10.      By filing its Complaint, Philips has consented to this Venue.

### COUNT I
### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT)

11.      Plaintiffs-in-Counterclaim repeat and reassert all allegations in the paragraphs above as if they were stated in full herein.

12.      Plaintiffs-in-Counterclaim have not infringed, nor do they now infringe, any claim of the patent-in-suit.

13.      Plaintiffs-in-Counterclaim have not induced, nor do they now induce, infringement of any claim of the patent-in-suit.

14.      Plaintiffs-in-Counterclaim have not contributorily infringed, nor do they now contributorily infringe, any claim of the patent-in-suit.

15.      Plaintiffs-in-Counterclaim are entitled to a declaratory judgment that they have not directly, contributorily, or by inducement, infringed any claim of the patent-in-suit.

## COUNT II
## (DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY)

16.     Plaintiffs-in-Counterclaim repeat and reassert all allegations in the paragraphs above as if they were stated in full herein.

17.     The patent-in-suit is invalid for failure to comply with one or more provisions of Title 35 of the United States Code related to patentability.

18.     On information and belief, Philips repeatedly delayed issuance of the '846 patent by unreasonable and unexplained delays in the prosecution of the chain of continuing patent applications commencing with the initial filing in 1973 culminating in the issuance of the patent in 1991 and an Ex Parte Reexamination Certificate in 2006, making the patent unenforceable because of prosecution laches.

19.     On information and belief, Philips unreasonably delayed submitting prior art to the Patent Examiner, or withheld prior art from the Patent Examiner, making it impractical or impossible for the Patent Examiner to fully consider such prior art and thereby rendering the '846 patent unenforceable.

20.     Plaintiffs-in-Counterclaim are entitled to a declaratory judgment that the patent-in-suit is invalid and unenforceable.

## COUNT III
## (DECLARATORY JUDGMENT OF PATENT MISUSE)

21.     Plaintiffs-in-Counterclaim repeat and reassert all allegations in the paragraphs above as if they were stated in full herein.

22.     On information and belief, in the early 1980's plaintiff Philips N.V. promulgated Standard Specifications for pre-recorded CD-Discs ("CDs") and has modified them over the years.

23.    Plaintiff Philips N.V. extended to Plaintiffs-in-Counterclaim licenses under a pool of patents that purportedly were "essential" for making CDs ("the Licenses"), falsely representing therein that Philips N.V. owns certain of the pooled patents ("the Philips Patents"), including the `846 Patent, when in fact the Philips Patents were not owned by plaintiff Philips N.V.

24.    Plaintiffs-in-Counterclaim paid royalties under the pool Licenses with Philips N.V. for CDs made by Plaintiffs-in-Counterclaim.

25.    By 2005, all Philips Patents purportedly "essential" for the types of CDs described as CD-Audio, CD-ROM Mode 1, and CD-ROM Mode 2 made by Plaintiffs-in-Counterclaim ("the CD types at issue") had expired, except for the `846 Patent, which expires on November 26, 2008, and U.S. Patent 5,305,301 (the "'301 Patent"), which is not asserted in this action and which expires on a later date.

26.    By 2005, an alternative economically viable and practicable method of making the CD types at issue existed which did not require the `846 Patent and the '301 Patent, establishing that the '846 Patent or the '301 Patent are not "essential."    Plaintiffs-in-Counterclaim practiced this alternative method to make the CD types at issue and stopped paying royalties under the `846 Patent and the '301 Patent because it was not practicing the `846 Patent and the '301 Patent.

27.    Plaintiffs-in-Counterclaim continued and still continue to pay U.S. Philips royalties under the Philips N.V. Licenses for the CDs that it makes other than the CD types at issue.

28.    As a result of the Plaintiffs-in-Counterclaim's discontinuing to pay royalties under the `846 Patent, plaintiffs instituted a wrongful plan, particularly directed to the Plaintiffs-in-

Counterclaim's customers, by which an alleged non-entity agent, Philips Intellectual Property & Standards ("Philips IPS"), falsely represented that the '846 Patent is "essential" in order to make any CD, including the CD types at issue.

29.    As a purported non-entity agent Philips IPS has at various times been represented by one William Lenihan, who identified himself as a "Director." Alleged non-entity Philips IPS has also been represented on Philips IPS letterhead by one Christopher Horgan, whose title is unknown, but who purports to perform Anti-Piracy Investigations for Philips IPS. Mr. Horgan's email address is "Chris.Horgan@Philips.com." At various times, Philips IPS stationary indicates it is affiliated at least with one Philips Electronics North America Corporation in Briarcliff Manor, N.Y., or with an unnamed entity located in San Jose, CA.

30.    As a part of plaintiffs' deceptive plan directed at the Plaintiffs-in-Counterclaim's customers, Philips IPS has sought royalties from the Plaintiffs-in-Counterclaim's actual or potential customers under the `846 Patent, a patent it could not own as a purported non-entity, for sales of the CD types at issue. As a purported non-entity Philips IPS has threatened the Plaintiffs-in-Counterclaim's actual or potential customers with infringement lawsuits and resulting damages for infringement of the `846 Patent, under which it has no rights, if royalties are not paid by Plaintiffs-in-Counterclaim or by the targeted Plaintiffs-in-Counterclaim's actual or potential customers on sales of the CD types at issue made by Plaintiffs-in-Counterclaim, and has attempted to divert an actual or potential customer of the Plaintiffs-in-Counterclaim to another supplier of CDs.

31.    On information and belief, a part of plaintiffs' wrongful plan was to utilize the alleged non-entity Philips IPS to make false statements and threats based on false statements in order to protect the plaintiffs from potential liability for such false statements, making threats

with which it could not itself comply, and engaging in other improper and unfair behavior designed to disrupt the Plaintiffs-in-Counterclaim's market for the CD types at issue.

32.     Plaintiffs have refused to reveal the structure of Philips IPS.

33.     On information and belief, plaintiffs acting together as part of their wrongful plan control or direct the activities of Philips IPS relevant to this action.

34.     The '846 Patent and the '301 Patent are not "essential" for the CD types at issue and do not cover those products.

35.     Plaintiffs-in-Counterclaim do not owe royalties for the manufacture and sale of the CD types at issue.

36.     The effect of plaintiffs' wrongful behavior is to restrain competition in the market of the CD types at issue by diverting actual or potential customers of the Plaintiffs-in-Counterclaim to other suppliers on false pretenses, with the intention of putting Plaintiffs-in-Counterclaim out of the business of making and selling the CD types at issue.

37.     Philips has misused the '846 Patent by promulgating Standard Specifications for pre-recorded CDs and wrongfully and anti-competitively seeking to impose mandatory licensing of the `846 Patent and the '301 Patent through knowing intimidation of the Plaintiffs-in-Counterclaim's customers by falsely representing that the `846 Patent and the '301 Patent are "essential" to enable customers to meet the Standard Specifications and threatening ruinous litigation if back and future royalties are not paid.   Such actions seek improperly to extend the temporal monopoly for the CD types at issue that U.S. Philips claimed for the expired Philips and other patents from the original package license.

38.     Philips has further misused the `846 Patent and the '301 Patent by falsely representing to Plaintiffs-in-Counterclaim customers that royalties are due to Philips under those

patents for all types of CDs, thereby further seeking to extend the monopoly U.S. Philips claimed for the expired Philips and other patents from the original package license.

39.    Philips has misused the '846 Patent by falsely representing that royalties are due to U.S. Philips on all CDs for another Philips Patent (U.S. Patent 5,790,512) that admittedly has no relevance to the CD type at issue, including in a letter to Eagles Recording Company ("Eagles") dated January 31, 2008 and in an email to H&R Block dated February 13, 2008.

40.    Philips has further misused the `846 Patent by seeking falsely to extend the temporal monopoly U.S. Philips claimed for the expired Philips Patents from the original package license by alleging to actual or potential customers of Plaintiffs-in-Counterclaim, including Eagles and H&R Block, that Plaintiffs-in-Counterclaim does not pay royalties for CDs and as a result the customers must pay such royalties on all CDs manufactured and sold by them in the past and in the future.

41.    On information and belief, these acts of Philips were with knowledge of the business relationships of Plaintiffs-in-Counterclaim and their actual or potential customers, with intent to harm those business relationships and Plaintiffs-in-Counterclaim's good will, and with intent to interfere with those business relationships, with malice or unfair or improper means, with intent to wrongfully extend the purported patent monopoly of the Philips and other patents in the original package license that had expired, and have harmed Plaintiffs-in-Counterclaim in its relationship with said customers and in its good will.

42.    The '846 Patent is unenforceable based on Philips' misuse of this patent and Plaintiffs-in-Counterclaim is entitled to a declaration as such.

## COUNT IV
## (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

43.     Plaintiffs-in-Counterclaim repeats and reasserts all allegations in the paragraphs above as if they were stated in full herein.

44.     Plaintiffs know that Eagles Recording Company in Chantilly, VA. ("Eagles") is a customer for CDs of the types at issue made by Plaintiffs-in-Counterclaim.

45.     On January 31, 2008, Philips Intellectual Property & Standards ("Philips IPS") sent a letter to Eagles, which act on information and belief was directed by plaintiffs.

46.     Philips IPS is purported by plaintiffs to be a non-entity without any existence or property and, on information and belief, plaintiffs have been acting in the name of Philips IPS as part of a wrongful and deceptive plan to collect royalties for patents that are not being practiced.

47.     The January 31 letter from Philips IPS to Eagles states that plaintiffs administer a "worldwide joint licensing program for essential patents…"   The letter went on to say that "Every CD, CD-R/RW, DVD, DVR/RW and player and disc made, used, offered for sale, sold or imported into the United States or Canada is covered by…" the patents contained in an attached list of "essential" patents. The letter falsely states that U.S. Patent Nos. 5,790,512 ("`512 Patent") and 5,068,846 ("`846 Patent") were "essential" patents for the manufacture of CDs, including the CD types at issue, and were infringed by unlicensed sellers. Since Eagles is an actual or potential customer of Plaintiffs-in-Counterclaim, a false and misleading representation in the letter was that CDs of the types offered by Plaintiffs-in-Counterclaim infringe the `512 and `846 Patents.

48.     Plaintiffs knew that the `512 Patent does not relate to the CDs at issue and therefore the `512 Patent was not infringed by either Plaintiffs-in-Counterclaim or Eagles. According to material published or caused to be published by Philips, the `512 Patent does not

apply to CDs of the type that Eagles had purchased from a subsidiary of Cinram International Inc. (Head Office), 2255 Markham Road, Toronto, Ontario, Canada, M1B 2W3, another CD replicator utilizing the same noninfringing manufacturing inovations as Plaintiffs-in-Counterclaim.

49.    On information and belief, Philips also knows that the `846 Patent is not an "essential" patent for making all CDs. Thus, the false and misleading statements to Eagles that selling [Cinram's] CDs by Eagles is an infringement of these two patents were designed to harm and disrupt Plaintiffs-in-Counterclaim's business relationship with Eagles and Plaintiffs-in-Counterclaim's good will.

50.    Plaintiffs-in-Counterclaim are licensed according to the Complaint and are known by plaintiffs to be licensed to make, use and sell CDs and therefore the implication that Plaintiffs-in-Counterclaim are unlicensed is false and misleading and designed to harm and disrupt Plaintiffs-in-Counterclaim's business relationship with actual and potential customers and Plaintiffs-in-Counterclaim's good will.

51.    The letter also falsely implies that Plaintiffs-in-Counterclaim do not pay royalties for CDs it produces and that Eagles is therefore liable for infringement of "patents belonging to Philips and others." Philips knows that Plaintiffs-in-Counterclaim do pay royalties for CDs it produces, and that Eagles does not infringe "patents belonging to Philips and others" by purchasing or considering for purchase the CDs at issue from Plaintiffs-in-Counterclaim.  This statement in the January 31 letter to Eagles is misleading and intended by plaintiffs to harm and disrupt Plaintiffs-in-Counterclaim's business relationship with actual or potential customers by frightening them into changing its supplier for CDs with anticompetitive effect and harming Plaintiffs-in-Counterclaim's good will.

52.     On February 13, 2008, Philips on information and belief caused Philips IPS to send an email communication to H&R Block, a purchaser or potential purchaser of CDs made by Plaintiffs-in-Counterclaim. This email misleadingly alleges that all of the CDs purchased by H&R Block went unreported and unpaid, when in fact CDs made by Plaintiffs-in-Counterclaim other than the CD types at issue were both reported and paid for.  In addition, Philips improperly attempted to divert H&R Block to another supplier of CD Discs based on the allegations made in its February 13 letter.

53.     On April 30, 2008, on information and belief, plaintiffs caused Philips IPS to send a letter to Digital Excellence LLC, stating that Philips N.V. and U.S. Philips own essential patents on, among other things, all types of CDs and DVDs. The letter asserts that licensed manufacturers of CDs are identified on a publicly available Licensee Database.

54.     Many purchasers and distributors of CDs refer to the mentioned Licensee Database in selecting a supplier of CDs.

55.     The letter states that manufacturers who have breached their license have been removed from the Licensee Database.

56.     Plaintiffs-in-Counterclaim are and remain licensed suppliers of CDs according to the Amended Complaint. Philips has wrongfully and unfairly removed Plaintiffs-in-Counterclaim from that Database and Plaintiffs-in-Counterclaim have thereby been prejudiced in their business and customer relationships and their good will.  Plaintiffs-in-Counterclaim were deliberately removed to harm Plaintiffs-in-Counterclaim in conducting their business in making and selling CDs and in their good will.

57.     On information and belief, plaintiffs acting in concert under the name of Philips IPS caused the statements in the January 31 and February 13, 2008 letters and communications

to be made and caused the acts revealed in the April 30, 2008 letter to be made knowing that these statements were false and misleading and that the acts undertaken were intentionally prejudicial to Plaintiffs-in-Counterclaim.  On information and belief, plaintiffs caused these statements to be made with the sole purpose of harming Plaintiffs-in-Counterclaim.  As a direct result of the knowingly false and misleading allegations caused by plaintiffs to be made, Plaintiffs-in-Counterclaim's business relationship with their customers and Plaintiffs-in-Counterclaim's good will have been harmed causing Plaintiffs-in-Counterclaim damages of a currently unknown amount.

58.    Plaintiffs have tortiously interfered with Plaintiffs-in-Counterclaim's business relationships, and Plaintiffs-in-Counterclaim is entitled to a declaration as such, along with monetary and injunctive relief.

## COUNT V
### (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP)

59.    Plaintiffs-in-Counterclaim repeat and reassert all allegations in the paragraphs above as if they were stated in full herein.

60.    On information and belief, plaintiff Philips N.V. and/or plaintiff U.S. Philips have caused a list of companies to be published on a website identified with Philips N.V., together with threats against customers who may consider buying CDs from companies not on the list.

61.    On information and belief, Plaintiffs-in-Counterclaim's existing and prospective customers periodically check the website to confirm that Plaintiffs-in-Counterclaim are not absent from that list.

62.    On information and belief, as of at least April 3, 2008, Philips N.V. and/or U.S. Philips caused Plaintiffs-in-Counterclaim to be removed from the list.

63.     On information and belief, one or both of Philips N.V. and U.S. Philips caused this change in the list to be made with the sole purpose of harming Plaintiffs-in-Counterclaim. As a direct result of such change, Plaintiffs-in-Counterclaim's business relationship with their customers and Plaintiffs-in-Counterclaim's good will have been harmed, causing Plaintiffs-in-Counterclaim damages of a currently unknown amount.

64.     One or both of Philips N.V. and U.S. Philips have tortiously interfered with Plaintiffs-in-Counterclaim's business relationships, and Plaintiffs-in-Counterclaim is entitled to a declaration as such, along with monetary and injunctive relief.

## EXCEPTIONAL CASE

65.     This is an exceptional case entitling Plaintiffs-in-Counterclaim to an award of their attorneys' fees incurred in connection with defending and prosecuting this action pursuant to 35 U.S.C. §285, as a result of, inter alia, Philips' assertion of the '846 patent against Plaintiffs-in-Counterclaim with the knowledge that the '846 patent is not infringed and/or is invalid.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs-in-Counterclaim respectfully request that:

1.     The First Amended Complaint be dismissed with prejudice as to Plaintiffs-in-Counterclaim and Plaintiffs-in-Counterclaim be awarded their costs for this action;

2.     Judgment be entered declaring that the patent-in-suit is not infringed by Plaintiffs-in-Counterclaim and is invalid and unenforceable;

3.     Judgment be entered declaring that Plaintiffs-in-Counterclaim have not contributorily infringed the patent-in-suit, and have not induced others to infringe the patent-in-suit;

4.     Judgment be entered declaring that Philips has tortiously interfered with Plaintiffs-in-Counterclaim's business relationships and Plaintiffs-in-Counterclaim be awarded damages as well as an injunction prohibiting Philips from sending further false and misleading communications to Plaintiffs-in-Counterclaim's actual or potential customers.

5.     Judgment be entered declaring that one or both of Philips N.V. and U.S. Philips IPS have tortiously interfered with Plaintiffs-in-Counterclaim's business relationships and Plaintiffs-in-Counterclaim be awarded damages as well as an injunction prohibiting such interference.

6.     Judgment be entered declaring this to be an exceptional case under 35 U.S.C. §285, and Plaintiffs-in-Counterclaim be awarded their attorneys' fees and expert fees incurred for defending this action and prosecuting their counterclaim; and

7.     Plaintiffs-in-Counterclaim be granted such other relief as the Court deems just and proper.

## JURY TRIAL

Defendants request a jury trial on all their claims.

Dated: June 26, 2008                    Respectfully submitted,


                                         s/ Ivan Kavrukov
                                        Ivan Kavrukov
                                        William E. Pelton
                                        Tonia A. Sayour
                                        Gregory J. Carbo
                                        COOPER & DUNHAM LLP
                                        1185 Avenue of the Americas
                                        New York, New York 10036
                                        Tel:  (212) 278-0400
                                        Fax:  (212) 391-7550
                                        ikavrukov@cooperdunham.com
                                        gcarbo@cooperdunham.com


                                        Attorneys for Defendants Entertainment
                                        Distribution Company (USA) LLC, Entertainment
                                        Distribution Company, James Caparro and Jordan
                                        Copland.

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2008, I electronically filed the foregoing

ANSWER AND COUNTERCLAIM OF ENTERTAINMENT DISTRIBUTION COMPANY

(USA) LLC, ENTERTAINMENT DISTRIBUTION COMPANY, JAMES CAPARRO, AND

JORDAN COPLAND with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

> Edward D. Johnson
> MAYER BROWN LLP
> Two Palo Alto Square, Suite 300
> 3000 El Camino Real
> Palo Alto, California 94306-2112
> wjohnson@mayerbrown.com
>
> Vince P. Kovalick
> John F. Hornick
> Samuel C. Bass
> FINNEGAN, HENDERSON, FARABOW,
>   GARRETT & DUNNER, L.L.P.
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> vince.kovalick@finnegan.com
> John.Hornick@finnegan.com
> Samuel.Bass@finnegan.com
>
> Christopher J. Houpt
> MAYER BROWN LLP
> 1675 Broadway
> New York, New York 10019
> choupt@mayerbrown.com

> _s/ Ivan Kavrukov_____
> Ivan Kavrukov