UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KONINKLIJKE PHILIPS ELECTRONICS
N.V. and U.S. PHILIPS CORPORATION,

     Plaintiffs,

    v.

ENTERTAINMENT DISTRIBUTION
COMPANY (USA) LLC;
ENTERTAINMENT DISTRIBUTION
COMPANY; UNIVERSAL MUSIC
GROUP, INC.; UMG MANUFACTURING
& LOGISTICS, INC.; JAMES CAPARRO,
an individual; JORDAN COPLAND, an
individual; and John Does No. 1 through
100,

     Defendants.

Case No. 08-cv-4070 (SCR)

PHILIPS' MOTION TO DISMISS PATENT MISUSE AND TORTIOUS
INTERFERENCE COUNTERCLAIMS ASSERTED BY
ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC
AND ENTERTAINMENT DISTRIBUTION COMPANY

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ................................................................................................... 2

    A.    EDC Defendants' Counterclaim For Patent Misuse Should Be
        Dismissed ............................................................................................ 2

    B.    EDC Defendants Failed to Plead Necessary Elements of Tortious
        Interference ......................................................................................... 8

        1.    There is No Case or Controversy Regarding Counterclaim
             Count IV ................................................................................ 9

        2.    EDC Defendants Failed To Allege That Any Specific
             Contracts or Business Relationships Have Been Damaged,
             in Counterclaim Counts IV & V ........................................... 12

        3.    EDC Defendants Failed to Plead Knowledge and Intentional
             Interference, in Counterclaim Counts IV & V ...................... 15

        4.    EDC Defendants Cannot State a Tortious Interference Claim
             Based on Philips' Patent Notice Letters ......................... 16

        5.    EDC Defendants' Allegations About Philips IPS and the '512
             Patent Do Not Support These Claims .......................... 19

III.  CONCLUSION ............................................................................................. 20

## TABLE OF AUTHORITIES

### CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ........................................................3

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007) ...................................................3, 12

*C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340 (Fed. Cir. 1998)...............................................3, 7

*City of Erie v. Paps*, 529 U.S. 277 (2000) ..................................................................................11

*Discover Group, Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78 (E.D.N.Y. 2004) ........................................9

*Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106 (TPG), 1997 WL 525403 (S.D.N.Y. Aug. 21, 1997)................................................................................................................12

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367 (Fed. Cir. 2004)....................................17

*GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369 (Fed. Cir. 2007)...........................................16, 17, 18

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)..................................................................................3

*Judkins v. HT Window Fashion Corp.*, No. 2007-1434, 2008 WL 930501 (Fed. Cir. April 8, 2008)........................17

*Leesona Corp. v. Varta Batteries, Inc.*, 522 F.Supp. 1304 (S.D.N.Y. 1981)..............................................2

*Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153 (S.D.N.Y. Apr. 10, 2003).....12

*U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) ...........................................2, 3

*U.S. Philips Corp. v. Princo Corp.*, Nos. 02 Civ. 246, 04 Civ. 2825, slip op. (S.D.N.Y. Jan. 24, 2005) ..............17, 18

*Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860 (Fed. Cir. 1997)...................................................16

*Virtue v. Creamery Package Mfg. Co.*, 227 U.S. 8, 33 S. Ct. 202, 57 L.Ed. 393 (1913)............................16

*White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163 (2d Cir. 2007)...............................12

### STATUTES

35 U.S.C. § 287 ...........................................................................................................19

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiffs Koninklijke Philips Electronics N.V. and U.S. Philips Corporation (collectively, "Philips") move to dismiss the counterclaim for patent misuse and the two counterclaims for tortious interference with a business relationship filed by Entertainment Distribution Company (USA) LLC ("EDC LLC") and Entertainment Distribution Company ("EDC"), and any other Defendants who join in such counterclaims (collectively "EDC Defendants").

Philips moved to dismiss essentially the same counterclaims once before, in *Koninklijke Philips Electronics N.V. v. Cinram International, Inc.*, Civ. Action No. 08-cv-00515 (CLB)(MDF), after Cinram had already amended them once under Fed. R. Civ. P. 15(a)(1)(A). In that action, the Cooper & Dunham law firm, which also represents the EDC Defendants in this action, filed and amended such counterclaims on Cinram's behalf.  Philips then moved to dismiss Cinram's patent misuse and tortious interference counterclaims.  Cinram then moved for leave to amend the challenged counterclaims a second time and submitted with their motion a proposed pleading entitled "Second Amended Answer and Counterclaim."  On July 17, 2008, the Court entered Cinram's Second Amended Answer and Counterclaim, the counterclaims of which are substantively identical to the EDC Defendants' counterclaims covered by this motion.  After amending twice, Cinram failed to state the same counterclaims that EDC Defendants now assert. As demonstrated below, EDC Defendants have not stated such counterclaims under applicable law, nor can they do so, and therefore Counterclaim Counts III, IV, and V should be dismissed with prejudice.[1]

---

[1] Identical counterclaims are also subject to Philips' motion to dismiss or request for pre-motion conference before Judge Brieant in *Philips v. ADS et al*, Civ. No. 08-cv-4068 (CLB) (S.D.N.Y.) and Judge Karas in *Philips v. Optical Experts*, Civ. No. 08-cv-4071 ( S.D.N.Y.), respectively.

## II.   ARGUMENT

### A.   EDC Defendants' Counterclaim For Patent Misuse Should Be Dismissed

Count III of EDC Defendants' counterclaims accuses Philips of misusing the patent in suit, No. 5, 068,846 ("the '846 patent"). EDC Defendants' patent misuse counterclaim is substantively the same as Cinram's twice-amended patent misuse counterclaim, was written by the same counsel, and still fails to allege patent misuse. The lynchpin of the amended counterclaim is that Philips allegedly misused the '846 patent by falsely claiming that the patent is essential for compliance with Philips' Standard Specifications for CD-Discs. EDC Defendants request a declaratory judgment that the '846 patent is unenforceable based on such alleged misuse. (Counterclaim ¶ 42) EDC Defendants make other allegations, discussed below, but they all depend on the lynchpin.[2]

EDC Defendants' counterclaim for declaratory judgment of patent misuse should be dismissed because they failed to plead the elements necessary to support such a claim. In determining the existence of patent misuse, "the key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179, 1184 (Fed. Cir. 2005); *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir.

---

[2] There is one substantive difference between Cinram's patent misuse counterclaim and EDC Defendants' patent misuse counterclaim, namely, EDC Defendants also seem to assert that Philips is misusing U.S. Patent No. 5,305,301 (the '301 Patent) (Counterclaim ¶¶ 25, 26, 34, 37, 38) The '301 Patent is not in suit. Only the patent in suit can be subject to a patent misuse defense, and the '846 patent cannot be held unenforceable based on the alleged misuse of a different patent. The same is true with respect to EDC Defendants' allegations about the '512 Patent (Counterclaim ¶ 48). *Leesona Corp. v. Varta Batteries, Inc.*, 522 F.Supp. 1304 (S.D.N.Y. 1981). Moreover, EDC Defendants make no allegations regarding the '301 Patent that they do not also assert regarding the '846 Patent, and therefore the '301 Patent adds nothing to EDC Defendants' patent misuse counterclaim, which is inadequate for the reasons set forth in this motion.

1998). Moreover, the U.S. Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (2007), requires plaintiffs to plead sufficient facts to make claims plausible on their face. The Second Circuit has adopted *Bell Atlantic* for all cases. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Iqbal v. Hasty*, 490 F.3d 143, 155-58 (2d Cir. 2007). Despite its length, EDC Defendants' counterclaim fails to allege the elements of patent misuse.

EDC Defendants allege only that Philips misused its patent rights by claiming that the '846 Patent is essential for compliance with the Standard Specifications for CD-Discs, and that as a result of alleged manufacturing innovations by EDC Defendants, the '846 Patent is no longer "essential" for manufacturing CD-Discs that meet the Standard Specifications. (Counterclaim ¶¶ 26, 28, 34, 37) Philips' alleged act cannot be the basis for a counterclaim of patent misuse, and EDC Defendants' alleged innovation is irrelevant to the elements of a patent misuse claim. The Court of Appeals for the Federal Circuit has explained that a claim for patent misuse cannot be based on questions raised by technological advancements as to whether a particular patent within a package license is still "essential" for compliance with the relevant standards. *U.S. Philips Corp.*, 424 F.3d at 1189-90, 1196-98.

Philips made this point in its motion to dismiss Cinram's counterclaims (Cinram, Dkt. 22 at 2-3). Cooper & Dunham responded for Cinram that *U.S. Philips* does not apply, but admitted that "*U.S. Philips* dealt with whether it was patent misuse to include in a patent license both 'essential' and non-'essential' patents when it made no difference to the royalty rate or amount" (Cinram, Dkt. 22 at 10), and that "[h]ere, while the '846 Patent had been part of a package license [as in *U.S. Philips*], all the other patents in the package have expired or were otherwise not relevant to the CDs in issue" (*id.* at 11). Because this case and *U.S. Philips* both involve a

package license for essential patents, the *U.S. Philips'* ruling has as much force here as it did there. The fact that all of the relevant patents in the EDC Defendants' package license have expired, except the '846 Patent in suit (admitted by EDC Defendants in Counterclaim ¶ 25), is irrelevant. In ¶¶ 26 and 28 of their patent misuse counterclaim, EDC Defendants allege not that Philips improperly designated the '846 Patent as essential, but that it is no longer essential because EDC Defendants allegedly found a way to comply with the Standard Specifications without practicing the '846 Patent. How can EDC Defendants' alleged innovation turn Philips' assertion of the '846 Patent's essentiality into patent misuse? The answer is that it cannot.

Moreover, EDC Defendants still fail to allege an anticompetitive effect, facts supporting such an allegation, or a nexus between their allegations and patent misuse, just as Cinram failed to do. Paragraph 30 alleges that Philips "has attempted to divert an actual or potential customer of the [EDC Defendants] to another supplier of CDs," but provides no facts to make such an allegation plausible on its face, as required by *Bell Atlantic*, or to link such alleged diversion to patent misuse. EDC Defendants failed to identify such alleged EDC Defendants' customer, and do not allege that the customer was actually diverted, that such alleged diversion was the result of patent misuse and was anticompetitive, that EDC Defendants were damaged by such alleged act, or that such damage resulted from patent misuse. Moreover, EDC Defendants' use of the word "potential" emphasizes that such Defendants are incapable of identifying any actual customers who have been diverted.

Paragraph 36, which contains the only other allegation of anticompetitive effect, suffers the same defect:

> The effect of plaintiffs' wrongful behavior is to restrain competition in the market of the CD types at issue by diverting actual or potential customers of the [EDC Defendants] to other suppliers on false pretenses, with the intention of putting [EDC Defendants] out of the business of making and selling the CD types at issue.

EDC Defendants allege no facts to support such allegation, or a nexus between the bare allegation and patent misuse. Where has competition been restrained? Which EDC Defendants' customers have been diverted to other suppliers? Who are the suppliers? What are the false pretenses? What is the nexus between the alleged patent misuse and the alleged diversion and damage? How does Philips' desire that EDC Defendants honor their CD-Disc patent license agreements -- which Philips has not terminated -- evidence an intention to put EDC Defendants out of the business of making and selling CD Discs? The quoted allegation is contrary to the facts alleged in Philips' First Amended Complaint, which simply seeks royalties for CD-Discs imported, made, and/or sold by EDC Defendants that comply with the Standard Specifications. How does this restrain competition, divert customers under false pretenses, attempt to put EDC Defendants out of the CD business, or evidence Philips' alleged intent to do so? Clearly, it does not. Thus, EDC Defendants' allegation of anticompetitive effect is not plausible on its face.

EDC Defendants have also copied Cinram's attempts to beef up the inadequate patent misuse claim in several other ways, asserting that:

- the wrong Philips entity is the licensor of the '846 Patent (Counterclaim ¶ 23);

- a Philips division (Philips IPS) acts on behalf of Philips with respect to enforcement of the patent in suit (Counterclaim ¶ 28-33);

- Philips is attempting to extend the monopoly of the expired patents in the EDC Defendants' package license, by claiming that the '846 Patent is essential, by falsely representing to EDC Defendants' customers that royalties are due under the '846 Patent for all types of CDs, and by alleging to EDC Defendants' customers (but they identify

none of their actual customers) that EDC Defendants do not pay royalties on all CDs made and sold by EDC Defendants (Counterclaim ¶ 37, 38, 40);[3] and

- Philips misused the '846 Patent by falsely representing that royalties are due to Philips for another Philips patent (the '512 Patent), not in suit (Counterclaim ¶ 39).

As Philips mentioned above, all of these allegations depend on the lynchpin: but for the dispute between Philips and EDC Defendants regarding the essentiality of the '846 Patent, there would be no claims and no counterclaims. But for EDC Defendants' allegation that the '846 Patent is not essential, none of these allegations could stand on their own and establish patent misuse.

Moreover, the first two types of allegations are irrelevant to a patent misuse defense. They support none of the elements of patent misuse. What difference does it make which Philips entity owns the patent or enforces the '846 Patent, as long as the patent owner is a plaintiff in this action? Regardless of which Philips company asserts the '846 Patent, how do such allegations support a counterclaim that Philips is improperly imposing conditions that derive their force from the patent, or that Philips has impermissibly broadened the scope of the patent grant with anticompetitive effect? EDC Defendants do not and cannot assert that neither Philips entity owns the '846 Patent. Thus, such allegations add no plausibility to a patent misuse counterclaim.

EDC Defendants' allegations that Philips is somehow attempting to extend the monopoly of the expired patents in the EDC Defendants' package license are convoluted, but one thing is clear: EDC Defendants hope to save their patent misuse defense by invoking some magic words

---

[3] EDC Defendants identify Eagles and H&R Block in Counterclaim ¶ 40, but Cinram says they are Cinram customers (see *infra*).

of patent misuse jurisprudence, namely "seeking falsely to extend the temporal monopoly U.S. Philips claimed for the expired Philips Patents from the original package license" (Counterclaim ¶ 40, see almost identical wording in ¶ 37 and 38). But EDC Defendants failed to provide any facts to make plausible on its face the allegation that Philips' assertion of the essentiality of the '846 Patent (Counterclaim ¶ 37), or Philips' alleged attempts to collect royalties for all types of CDs (Counterclaim ¶ 38, 40), somehow extend unidentified expired patents. Moreover, this raw allegation adds nothing to the counterclaim, which rises and falls on whether Philips improperly did anything to broaden the scope of the '846 Patent with anticompetitive effect. Again, such allegations add no plausibility to this counterclaim.

Finally, patent misuse is a viable defense only until the alleged misuse has been purged. *C.R. Bard*, 157 F.3d at 1372. This requirement kills EDC Defendants' remaining allegations, namely, that Philips allegedly misused the '846 Patent by attempting to extend the expired patents, by allegedly telling Eagles and H&R Block (Cinram's alleged customers) that EDC Defendants do not pay CD royalties (Counterclaim ¶ 40), and that Philips misused the '846 Patent by representing to Eagles and H&R Block that royalties are owed to Philips under another Philips patent, not in suit (Counterclaim ¶ 39). Cinram stated in their opposition to Philips' first motion to dismiss this counterclaim (Cinram, Dkt. 28 at 8):

> At the direction of the Court [during the March 7, 2008 hearing], the parties met privately in a jury room and resolved the issue in part. Philips agreed to send to those customers of Cinram who received such letters [i.e., Eagles and H&R Block], new letters limited to . . . [the] '846 Patent . . . and without the false statements. Philips agreed that all future letters would be limited to the '846 Patent and would not contain the other false and misleading statements about which Cinram complained. However, Philips would not agree to admit to the recipients that any statements contained in those letters were false or misleading.

Cooper & Dunham argued on Cinram's behalf that Eagles and H&R Block are Cinram customers. (Bass Decl., Ex. A) In view of Cinram's admission that any case or controversy

between Cinram and Philips relating to Philips' letters to Eagles and H&R Block was resolved

before EDC Defendants filed their patent misuse counterclaim, any alleged patent misuse based

on these facts was purged. Moreover, the '512 Patent is not in suit and therefore is irrelevant, for

the reasons set forth in footnote 2, *supra*.

Thus, such allegations do not support a patent misuse counterclaim or make EDC

Defendants' misuse counterclaim any more plausible. Even if Philips and Cinram have not

resolved this issue, EDC Defendants failed to provide any allegations showing a nexus between

such alleged acts and the elements of a patent misuse defense. Such allegations do not state a

claim that Philips imposed any conditions that derive their force from the patent, or that Philips

impermissibly broadened the scope of the patent grant with anticompetitive effect.

For these reasons, EDC Defendants' counterclaim for declaratory judgment of patent

misuse should be dismissed with prejudice.

**B.      EDC Defendants Failed to Plead Necessary Elements of Tortious Interference**

In Count IV of their Counterclaims, EDC Defendants accuse Philips of tortious

interference with a business relationship, based on letters Philips sent to two companies who

purchased CD-Discs not from them, but from Cinram, stating that royalties were owed to Philips

on those CD-Discs. In Counts IV and V of their Counterclaims, EDC Defendants accuse Philips

of tortious interference with a business relationship based on the alleged removal of EDC

Defendants from a list maintained on Philips' website.

Cinram asserted Counterclaim Count IV in their original Answer, then amended it and

added Count V. Philips then moved to dismiss. Cinram then amended these counterclaims

again, and EDC Defendants copied them, but failed to fix their defects. Because EDC

Defendants failed to plead the necessary elements of a tortious interference claim, and obviously

8

cannot do so after three tries, Counts IV and V of their counterclaims should be dismissed with prejudice.

Under New York law, to plead a valid claim of tortious interference with business relations, EDC Defendants must allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or, failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Discover Group, Inc. v. Lexmark Int'l, Inc.,* 333 F. Supp. 2d 78, 86 (E.D.N.Y. 2004) (quoting *Goldhirsh Group, Inc. v. Alpert,* 107 F.3d 105, 108-09 (2d Cir. 1997)).

EDC Defendants' counterclaims for tortious interference with a business relationship should be dismissed for four independent reasons, namely, (1) there is no case or controversy between Philips and EDC Defendants with respect to Counterclaim Count IV, (2) EDC Defendants failed to identify any specific contracts that have been breached or specific business relationships that have been damaged due to Philips' alleged actions with respect to Counterclaim Counts IV and V, (3) EDC Defendants failed to allege that Philips had knowledge of contracts or business relationships and intentionally interfered with them with respect to Counterclaim Counts IV and V, and (4) Philips' patent notice letters, about which EDC Defendants complain, are protected unless objectively baseless, and EDC Defendants have not and cannot make any such allegations.

### 1.    There is No Case or Controversy Regarding Counterclaim Count IV

Paragraphs 44, 45, 47-52, and 57 of Counterclaim Count IV are based on a January 31, 2008 letter Philips sent to Eagles Recording Company and a February 13, 2008 email Philips sent to H&R Block, who Cinram alleges are its customers. EDC Defendants allege that such communications to Cinram's alleged customers contained false statements that tortiously

9

interfered with EDC Defendants' business.   On February 21, 2008, Cooper & Dunham sent

Judge Brieant of this Court a letter, on Cinram's behalf, complaining about those very

communications and requesting a pre-motion conference "to discuss their proposed motion for

preliminary relief directing plaintiffs to refrain from sending misleading threats to defendants'

customers and to produce copies of such communications to allow for remedial advice to

customers."  (Bass Declaration, Ex. A)

On March 7, 2008, the Court held such pre-motion conference on the record, and sent the

parties into the jury room to attempt to resolve this problem.[4]  As Cooper & Dunham admitted on

Cinram's behalf in the opposition to Philips' first motion to dismiss  this counterclaim  (Cinram,

Dkt. 28 at 8):

> At the direction of the Court [during the March 7, 2008 hearing], the parties met
> privately in a jury room and resolved the issue in part.  Philips agreed to send to those
> customers of Cinram who received such letters [i.e., Eagles and H&R Block], new letters
> limited to . . .  [the] '846 Patent . . . and without the false statements.  Philips agreed that
> all future letters would be limited to the '846 Patent and would not contain the other false
> and misleading statements about which Cinram complained.  However, Philips would not
> agree to admit to the recipients that any statements contained in those letters were false or
> misleading.

Before leaving the courthouse on March 7, Philips and Cinram reported to the Court that they

had resolved the dispute and that no further action would be requested or required from the

Court.  On March 20, 2008, the Court made the following minute entry "Discovery Hearing held

on 3/7/2008. Discovery issues are resolved by the Court."  Although the Court referred to a

"discovery hearing," Cinram's pre-motion conference was the only issue before the Court that

day.  Thus, from the Court's perspective, and Philips' perspective, and even from Cinram's

perspective as quoted above, this problem was resolved on March 7, 2008.

---

[4] Philips has ordered the transcript of the March 7 hearing, but has not yet received it.

Philips then memorialized the jury-room agreement (Bass Decl., Ex. B), sent new letters to Eagles and H&R Block (consistent with the March 7, 2008 agreement), and heard no complaints from Cinram that such letters were inaccurate, improper, or not in compliance with the parties' agreement, and neither EDC Defendants' nor Cinram's counterclaim mentions the later letters. Thus, Philips' and Cinram's agreement eliminated any case or controversy between them with respect to the Eagles and H&R Block letters.[5]  Because there is no case or controversy between Philips and Cinram with respect to these alleged Cinram customers, there certainly is no case or controversy between Philips and EDC Defendants with respect to them.

Absent a case or controversy between Philips and EDC Defendants, Counterclaim Count IV must be dismissed. *City of Erie v. Paps*, 529 U.S. 277 (2000). In *City of Erie*, the U.S. Supreme Court stated as follows:

> "'[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *County of Los Angeles v. Davis, 440 U.S. 625, 631, 59 L. Ed. 2d 642, 99 S. Ct. 1379 (1979)* (quoting *Powell v. McCormack, 395 U.S. 486, 496, 23 L. Ed. 2d 491, 89 S. Ct. 1944 (1969)*). The underlying concern is that, when the challenged conduct ceases such that "'there is no reasonable expectation that the wrong will be repeated,'" *United States v. W. T. Grant Co., 345 U.S. 629, 633, 97 L. Ed. 1303, 73 S. Ct. 894 (1953)*, then it becomes impossible for the court to grant "'any effectual relief whatever' to [the] prevailing party," *Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 121 L. Ed. 2d 313, 113 S. Ct. 447 (1992)* (quoting *Mills v. Green, 159 U.S. 651, 653, 40 L. Ed. 293, 16 S. Ct. 132 (1895)*). In that case, any opinion as to the legality of the challenged action would be advisory.

---

[5] The EDC Defendants mention one other Philips letter, namely, Philips' alleged April 30, 2008 letter to Digital Excellence LLC (Counterclaim ¶ 53). However, EDC Defendants do not allege that Digital Excellence is a customer of any EDC Defendant, that such letter contained any incorrect statements, or that any EDC Defendant was damaged by such letter in any way. Thus, EDC Defendants also allege no case or controversy between Philips and any EDC Defendant with respect to the Digital Excellence letter.

529 U.S. at 287; *accord White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163,

167-8 (2d Cir. 2007). The issues here are no longer live and EDC Defendants have no

reasonable expectation that they will be repeated. Moreover, the alleged problem here was

between Philips and Cinram, not between Philips and EDC Defendants, and therefore the latter

have no reason to believe that **any** such problem will **ever** arise between them and Philips. For

this reason alone, Counterclaim Count IV should be dismissed with prejudice, for lack of a case

or controversy.

2.    **EDC Defendants Failed To Allege That Any Specific Contracts or Business Relationships Have Been Damaged, in Counterclaim Counts IV & V**

To satisfy the first element of a claim for tortious interference with a business

relationship, EDC Defendants must allege that a valid third party contract was breached or that a

specific business relationship was damaged as a result of Philips' conduct. *Maalouf v. Salomon*

*Smith Barney, Inc.*, No. 02 Civ. 4770 (SAS), 2003 WL 1858153, at *8 (S.D.N.Y. Apr. 10, 2003);

*Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106 (TPG), 1997 WL 525403, at *2

(S.D.N.Y. Aug. 21, 1997) (finding vague allegation that party interfered with "at least 5

prospective customers" inadequate as a matter of law). Again, *Bell Atlantic* requires enough

facts to make the claim plausible on its face. 127 S. Ct. at 1974.

EDC Defendants have not and cannot plead such facts in Counterclaim Counts IV or V.

EDC Defendants failed to allege that even one contract was breached or that any specific

business relationship was damaged as the result of Philips' alleged letters. They refer to

"potential" customers because no relationships with actual customers have been harmed. EDC

Defendants allege that Philips' statements contained in the January 30, 2008 letter were

"designed" or "intended" "to harm and disrupt [EDC Defendants'] business relationship with

Eagles," or with "actual or potential customers," and for "frightening [actual or potential

customers] into changing its [sic] supplier for CDs" (Counterclaim ¶ 49, 50, 51). What business relationship with Eagles? Eagles is allegedly a Cinram customer. EDC Defendants also carefully avoid alleging any actual harm or disruption of any relationship, or that any customer actually changed suppliers. Similarly, EDC Defendants allege that "Philips improperly attempted to divert H&R Block to another supplier . . . based on the allegations made in its February 13 letter" (Counterclaim ¶ 52), but failed to allege that H&R Block actually changed suppliers.

EDC Defendants' only allegation of actual harm is the following, which concludes this counterclaim:

> As a direct result of the knowingly false and misleading allegations caused by plaintiffs to be made, **[EDC Defendants']** business relationship with their customers and **[EDC Defendants']** good will have been harmed causing **[EDC Defendants]** damages of a currently unknown amount.

(Counterclaim ¶ 57) Such allegation fails to identify any valid third party contract that was breached or any specific business relationship damaged as a result of Philips' conduct, and the detailed allegations of this counterclaim -- which, as discussed above, relate to Cinram's alleged customers -- clearly show not only that no such breach or damage occurred, but that no breach or damage occurred to EDC Defendants. Because EDC Defendants failed to identify any breached third party contracts or specific damaged business relationships, EDC Defendants' Counterclaim IV for tortious interference with a business relationship should be dismissed on this basis alone.

With respect to Counterclaim Count V, which relates to Philips' alleged removal of EDC Defendants from a website list (they do not allege what kind of list), EDC Defendants allege no valid third party contract that was breached or a specific business relationship they claim was damaged as a result of Philips' conduct. Counterclaim ¶ 60 alleges that Philips made "threats against customers who may consider buying CDs from companies not on" Philips' website list,

but identifies no such threats or customers. If EDC Defendants can truthfully plead that such threats occurred, then they can and should identify the threatened companies in their allegations. But EDC Defendants' counsel have failed to do so in two attempts, and therefore EDC Defendants should not get another chance.

In Counterclaim ¶ 63, EDC Defendants allege that "[a]s a direct result of" Philips' removal of EDC Defendants' names from Philips' website list EDC Defendants' "business relationship with their customers and [EDC Defendants'] good will have been harmed." Again, EDC Defendants identify no such customers, no contracts breached by such customers as the alleged result of Philips' actions, and no specific business relationships damaged thereby.[6]

EDC Defendants' Counterclaim Counts IV and V suffered these same defects in their prior incarnations in Cinram's Answers, and Philips moved to dismiss them, making the same arguments. Cinram opposed the motion to dismiss. More importantly, Cinram amended these counterclaims after Philips challenged them with these same arguments, but failed to provide any specifics. EDC Defendants then copied them almost verbatim. This can only mean that EDC Defendants are incapable of identifying any customer relationships that have been harmed by Philips' alleged actions, and therefore Counterclaim Counts IV and V should be dismissed with prejudice.

---

[6] In Counterclaim Count IV, EDC Defendants alleged that Philips sent a letter to Digital Excellence (Counterclaim ¶ 53), and that such letter states that manufacturers who have breached their license agreements have been removed from Philips' licensee database (Counterclaim ¶ 55). EDC Defendants also allege that Philips' removal of EDC Defendants from the licensee database has "prejudiced [EDC Defendants] in their business and customer relationships" (Counterclaim ¶ 56). However, EDC Defendants failed to allege that Digital Excellence is a customer of any EDC Defendant or that any EDC Defendant's business relationship with Digital Excellence -- if any of them had one -- was harmed. Thus, Counterclaim paragraphs 53-56 relating to Digital Excellence do not help or save Counterclaim V.

3.    **EDC Defendants Failed to Plead Knowledge and Intentional Interference, in Counterclaim Counts IV & V**

EDC Defendants also failed to plead the second element of a tortious interference claim in both Counterclaim Counts IV and V, namely, that Philips knew of the specific EDC Defendants' customer relationships identified under the first element and intentionally interfered with them. EDC Defendants make no such allegation with respect to Eagles or H&R Block (who are allegedly Cinram customers), or Digital Excellence, and therefore this counterclaim should be dismissed because EDC Defendants have failed to plead the knowledge and intent element of a tortious interference claim.

With respect to Counterclaim Count V, which relates to Philips' alleged removal of EDC Defendants from a website list, EDC Defendants make no allegations that Philips was aware of any particular business relationships between EDC Defendants and customers, with which Philips intentionally interfered. Although paragraphs 53-56 of Counterclaim IV allege that Philips notified Digital Excellence that EDC Defendants' names were removed from Philips' licensee database, Philips has already pointed out that EDC Defendants failed to allege that Digital Excellence is a customer of any EDC Defendant or that any EDC Defendant's business relationship with Digital Excellence -- if any of them had one -- was harmed (see footnote 6, *supra*). Moreover, EDC Defendants failed to allege that Philips knew that Digital Excellence was or is a customer of any EDC Defendant -- which may or may not be true -- and that Philips intentionally interfered with such customer, if it was one.

Again, EDC Defendants' Counts IV and V suffered these same defects in their prior incarnations in Cinram's pleadings, Philips made the same arguments in its motion to dismiss Cinram's counterclaims, EDC Defendants copied Cinram's counterclaims, and EDC Defendants failed to provide any specifics when they asserted the same counterclaims that Cinram has now

15

failed to state twice.  This can only mean that EDC Defendants are incapable of alleging such facts, and therefore Counterclaim Counts IV and V should be dismissed with prejudice.

4.    **EDC Defendants Cannot State a Tortious Interference Claim Based on Philips' Patent Notice Letters**

EDC Defendants' tortious interference counterclaims are based on Philips' letters to Cinram's alleged customers, Eagles and H&R Block, notifying them of Philips' patent rights, and such third parties' infringement of such rights.  Such letters cannot be the basis of a tortious interference claim, even if Eagles and H&R Block were customers of any EDC Defendant.  For the reasons set forth below, EDC Defendants failed to state claims for tortious interference and the legal deficiency of such claims cannot be fixed.

The U.S. patent laws not only permit, but *encourage*, the patent owner to makes its rights known.  *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007) ("the patent laws permit a patentee to inform a potential infringer of the existence of its patent"); *see also* 35 U.S.C. § 287 (authorizing a patentee to "give notice to the public" of a patent); *Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37-38, 33 S. Ct. 202, 57 L.Ed. 393 (1913) ("Patents would be of little value if infringers of them could not be notified of the consequences of infringement or proceeded against in the courts."); *Va. Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction.").  Indeed, "This Court recognizes a patent holder's property interest in its lawful monopoly. . . . Because of the excessive transactional costs of litigation, including attorney's fees, loss of a company's good will and other potential risks to business, *attempts to resolve claims or disputes by demand letter prior to filing suit are encouraged.*" *U.S. Philips Corp. v.*

*Princo Corp.*, Nos. 02 Civ. 246, 04 Civ. 2825, slip op. at 9-10 (S.D.N.Y. Jan. 24, 2005) (emphasis added).

Recognizing the importance of such communications, the Federal Circuit requires that a "plaintiff claiming that a patent holder has engaged in wrongful conduct by asserting claims of patent infringement must establish that the claims of infringement were *objectively baseless*." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (emphasis added); *Judkins v. HT Window Fashion Corp.*, No. 2007-1434, 2008 WL 930501, at *7 (Fed. Cir. April 8, 2008) (citing *Globetrotter's* objectively baseless standard with approval and affirming denial of preliminary injunction against a patent owner accused of violating § 43(a) of the Lanham Act, 15 U.S.C. §1125(a), by sending patent infringement notice letters to defendants' actual and prospective customers). To meet this standard, a plaintiff must set forth "convincing objective factors" to show that the communication complained of lacked any objective basis. *GP Indus.*, 500 F.3d at 1375 ("subjective considerations and unconvincing objective factors" are not sufficient). According to the Federal Circuit, "objectively baseless" means that "no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent." *Judkins*, 2008 WL 930501, at *3.

Here, EDC Defendants not only failed to acknowledge the "objectively baseless" standard, but also failed to allege the "convincing objective factors necessary to state a claim." *See GP Indus.*, 500 F.3d at 1375. Instead of alleging facts showing why Philips is not a reasonable litigant and cannot realistically expect to prevail in infringement actions against recipients of its patent infringement notice letters, EDC Defendants make vague, conclusory, and subjective allegations about Philips' communications with Cinram's alleged customers, Eagles and H&R Block. For example, EDC Defendants allege that Philips falsely stated in its letter to

17

Eagles that the '846 Patent is not "essential" (Counterclaim ¶ 47), and that Philips knows that the '846 Patent is not essential (Counterclaim ¶ 49). But EDC Defendants make no attempt to explain why the essentiality of the '846 Patent is allegedly objectively baseless. Such omission is inexcusable here because EDC Defendants' belief that the '846 Patent is not essential is the **ENTIRE** basis for their allegations that the statements set forth in the Eagles and H&R Block letters regarding their infringement of the '846 Patent (Counterclaim ¶ 47, 49, 51), and that EDC Defendants' CD-Discs are not licensed by Philips (Counterclaim ¶ 47, 50-52, 57), are "false and misleading". Furthermore, why are EDC Defendants complaining about Philips' patent notice letters to Cinram's alleged customers?

EDC Defendants also assert that Philips made such communications *subjectively* "knowing that [the statements were] false and misleading". (Counterclaim ¶ 57) However, the mere allegation that communications were made "in disregard of the truth or falsity of the purported infringement" is not sufficient to show that the assertions were objectively baseless. *GP Indus.*, 500 F.3d at 1375. As the Federal Circuit explained: "Subjective considerations of bad faith are irrelevant if the assertions are not objectively baseless." *Id.*

EDC Defendants' vague and conclusory statements are not the convincing allegations of objective fact necessary to show that Philips' communications were objectively baseless. *See GP Indus.*, 500 F.3d at 1375. Similarly, EDC Defendants' allegations in Counterclaim Count IV, ¶ 56 and Count V, ¶ 62 that Philips de-listed EDC Defendants also are inadequate.

As this Court has recognized, conclusory claims are insufficient to establish that customer communications are unlawful. *Princo*, slip op. at 10. In short, EDC Defendants have not made the allegations necessary to challenge "the essential fact that Philips is permitted to protect its property interest in its patents by communicating with alleged infringers and

informing them that Philips may pursue litigation if they do not stop their infringing activities."
*Id.* Nor can EDC Defendants do so, particularly because Eagles, H&R Block, and Digital
Excellence are not their customers and no other patent notice letters have been identified.

For these reasons, EDC Defendants' two tortious interference counterclaims should be
dismissed, and leave to amend should not be granted because EDC Defendants cannot plead
facts to support the objectively baseless standard no matter how many times their counterclaims
are rewritten.[7]

### 5. EDC Defendants' Allegations About Philips IPS and the '512 Patent Do Not Support These Claims

EDC Defendants repeat in their two tortious interference counterclaims the allegations
about Philips IPS set forth in their patent misuse counterclaim, namely, that Philips is acting in
the name of Philips IPS (Counterclaim ¶¶ 46, 47, 52, 53, 57). EDC Defendants also repeat the
allegation that Philips' '512 Patent was incorrectly mentioned in the Eagles and H&R Block
letters (Counterclaim ¶ 47, 48). Such allegations add nothing to the tortious interference
counterclaims, and are irrelevant to the legal elements of such a claim.

---

[7] EDC Defendants' Counterclaim Count V is directed to Philips' alleged removal of EDC
Defendants from a list maintained on Philips' website, not Philips' patent infringement notice
letters, as in Count IV. However, Defendants appear to allege in Counterclaim Count V that the
absence of a CD-Disc manufacturer from Philips' website list constitutes notice by Philips that
such manufacturer is not licensed, and therefore is infringing one or more Philips patents. Such
an allegation would be inaccurate, but Philips does not wish to argue the merits here. To the
extent that Defendants are asserting, in substance, that the absence of a manufacturer from
Philips' website list constitutes notice of patent infringement, the objectively baseless standard,
and EDC Defendants' failure to plead sufficient facts to meet it, apply equally to Philips' motion
to dismiss EDC Defendants' Counterclaim Count V.

### III.    CONCLUSION

EDC Defendants obviously copied their counterclaims from Cinram solely for the sake of asserting counterclaims even if baseless, tweaking them here and there.  They were weak enough when Cinram asserted them.  They border on frivolous here, and for this reason alone should be dismissed.

For this reason and the reasons set forth above, EDC Defendants' counterclaim seeking a declaration of patent misuse and their two counterclaims for tortious interference with a business relationship should be dismissed with prejudice.

Date:   July 21, 2008

/s/Christopher J. Houpt
Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

Vince P. Kovalick (*pro hac vice*)
John F. Hornick (*pro hac vice*)
Samuel C. Bass (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Fax: (650) 331-2060

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*

## **Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Christopher J. Houpt</u>

CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2008, a copy of the foregoing **PHILIPS' MOTION TO DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS ASSERTED BY ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC AND ENTERTAINMENT DISTRIBUTION COMPANY** was served by email and FedEx delivery on the following attorneys for Defendants Entertainment Distribution Company (USA) LLC ("EDC LLC") and Entertainment Distribution Company ("EDC"), addressed as follows:

Ivan S. Kavrukov
ikavrukov@cooperdunham.com
William E. Pelton
wpelton@cooperdunham.com
Tonia A. Sayour
tsayour@cooperdunham.com
Gregory J. Carbo
gcarbo@cooperdunham.com

Cooper and Dunham, LLP
1185 Avenue of the Americas
New York, New York 10036

_____