IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION, | : : : : | |
| Plaintiffs, | : : | Civil Action No.08-cv-4070 (SCR) |
| v. | : : | ECF Case |
| ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC; ENTERTAINMENT DISTRIBUTION COMPANY; UNIVERSAL MUSIC GROUP, INC.; UMG MANUFACTURING & LOGISTICS, INC.; JAMES CAPARRO, an Individual; JORDAN COPLAND, an Individual; and John Does No. 1 through 100, | : : : : : : : : : | |
| Defendants and Counterclaim Plaintiffs. | : : : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PHILIPS' MOTION TO DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS**

**TABLE OF CONTENTS**

I.   INTRODUCTION……………………………………………………………………...1

II.  ARGUMENT…………………………………………………………………………...2

     A.   The Standard for Rule 12(b)(6) Motions…………………………..................2

     B.   Philips Misused the '846 Patent, as Defendants Have Properly Alleged…………3

     C.   Defendants Have Pled All of the Elements Required to Maintain a Claim For Tortious Interference………..……………………………………………………8

          1.   The Controversy Has Not Been Resolved………………………………...9

          2.   Defendants Have Alleged That Business Relations Have Been Damaged……………………………………………………..10

          3.   Philips Had Knowledge Of Defendants' Customers and Intentionally Took Actions That it Knew Would Harm Defendants' Relationships With These Customers………………………11

          4.   Philips' Patent "Notice" Letters Were Objectively Baseless…………….12

III. CONCLUSION…………………………………………………………………..13

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Brulotte v. Thys. Co.*, 379 U.S. 29 (1964)……………………………………………………3, 6

*C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340 (Fed. Cir. 1998)……………………………..3

*Davis v. Monroe Count Bd. Of Educ.*, 526 U.S. 629 (1999)…………………………………...2

*Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106 (TPG)
1997 US DIST LEXIS 12570…………………………………………………………………11

*Etna Products Co., Inc. v. Harold Finney*, 1993 U.S. Dist. LEXIS 2796,
*9-10 (S.D.N.Y. 1993)……………………………………………………………………..12

*Globetrotter Software, Inc. v. Elan Computer Group, Inc*., 362 F.3d 1367 (Fed. Cir. 2004)…...12

*Golan v. Pingel Enter., Inc.,* 310 F.3d 1360 (Fed.Cir. 2002)……………………………………12

*Goldhirsh Group v. Alpert*, 107 F.3d 105 (2d Cir. 1997)…………………………………………8

*GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369 (Fed. Cir. 2007)……………………….12, 13

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980)………….......11

*In re Verestar, Inc.*, 343 B.R. 444 (Bankr. S.D.N.Y. 2006)…………………………………..10

*Koninklijke Philips Electronics N.V. v. Cinram International, Inc.*
Civ. Action No. 08-cv-00515(CS)……………………………………………………………...1, 2

*Lucasey Mfg. Corp. v. Anchor Pad Intern., Inc.*, 698 F.Supp. 190 (N.D. Cal. 1988)…………...12

*Quanta Computer, Inc. v. LG Electronics, Inc.,* 128 S.Ct. 2109 (2008)………………………....4

*Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F.Supp. 2d 301 (S.D.N.Y. 2003)……...10

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)……………………………………………………….3

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228 (S.D.N.Y. 2002)............2, 10

*SLM, Inc. v. Shelbud Prod. Corp.*, No. 92 Civ. 3073, 1993 US DIST LEXIS 5171
at *5 (S.D.N.Y. Apr. 20, 1993)……………………………………………………………..10

*T.J. Roaco, Ltd. v. Syntex Pharmaceuticals Int'l, Ltd.*, 227 U.S.P.Q. 1033 (D.N.J. 1985)……...12

*U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005)……………...2, 3, 5, 6

## **RULES**

Fed. R. Civ. Pro. 8(a)………………………………………………………………………….10

Fed. R. Civ. Pro. 12(b)(6)………………………………………………………………....2, 6, 8

Defendants Entertainment Distribution Company (USA) LLC ("EDS LLC") and Entertainment Distribution Company ("EDC"), who are collectively referred to as the "Defendants," hereby oppose Philips' Motion To Dismiss Patent Misuse And Tortious Interference Counterclaims Asserted By Entertainment Distribution Company (USA) LLC And Entertainment Distribution Company (Dkt. No. 27).

I.     INTRODUCTION

In their motion to dismiss, Plaintiffs Koninklijke Philips Electronics N.V. ("Philips N.V.") and U.S. Philips Corporation ("U.S. Philips"), collectively referred to as "Philips," argue that Defendants' counterclaims should be dismissed because they are similar to the counterclaims that Philips moved to dismiss in a related lawsuit, also alleging infringement of U.S. Patent 5,068,846 ("the '846 Patent). However, there was never a ruling on that motion because Philips withdrew it.[1] *See Koninklijke Philips Electronics N.V. v. Cinram International, Inc.*, Civ. Action No. 08-cv-00515(CS). Moreover, Philips fails to mention that its own wrongful acts, e.g.. Philips' wrongful removal of Cinram's name from a website identifying licensed CD replicators to potential customers, and Philips' subsequent refusal to identify the entity that controls that website, forced Cinram to amend its counterclaims in that case.[2] Most important,

---

[1] Philips has since filed another motion to dismiss in that case that is essentially the same as their motion to dismiss in this case. It also has not been ruled on.

[2] Philips' motion to dismiss the counterclaims in the *Philips v. Cinram* action was not ruled upon because Philips withdrew it. In the *Philips v. Cinram* action, Cinram filed its Answer and Counterclaims on March 24, 2008. Afterwards, Cinram found out that an entity identified in ¶29 of Counterclaim Count III using the name Philips Intellectual Property and Standards ("Philips IPS") had removed Cinram's name from the website identifying licensees of the '846 Patent. In response, Cinram filed an amended answer and counterclaim on April 9, 2008 to add Philips IPS as a party and to assert a claim of tortious interference with business relationships against Philips IPS. Counsel for Philips then stated that Philips IPS was a non-existent entity (Philips now refers to Philips IPS as a "division" of Philips (Philips' Brief at 6) but does not say of which Philips entity Philips IPS is a division, and continues to refuse to reveal the structure of Philips IPS, as Defendants have alleged in ¶ 32 of Counterlaim Count III). Although Cinram offered to amend its counterclaims to drop Philips IPS as a party if Philips identified which entity controlled the Philips IPS website, Philips instead chose to file a motion to dismiss. In response, Cinram filed a motion to amend its counterclaims to remove Philips IPS as a party and more clearly stated its counterclaims.

Philips' assertion that it was unaware of Defendants' relationships with their customers is completely meritless given that Philips has named an alleged customer as a defendant in this lawsuit.

In the present case, Defendants have properly alleged claims for patent misuse and tortious interference with business relationships. As stated below, Defendants have alleged specific facts that clearly demonstrate the nature and effects of Philips' actions constituting patent misuse as well as the harm suffered by Defendants as a result of Philips' interference with their business relationships. Accordingly, Philips' motion to dismiss these counterclaims should be denied.

Philips' reliance on *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) as a shield against a finding of patent misuse is difficult to understand as that decision expressly refutes the position Philips is taking in this case, as explained below in section II B.

## II.    ARGUMENT

### A.    The Standard for Rule 12(b)(6) Motions

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the challenged allegations must be taken as true and should be construed in the light most favorable to the pleader. *See Davis v. Monroe Count Bd. Of Educ.*, 526 U.S. 629, 633 (1999); *Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228, 235 (S.D.N.Y. 2002). All reasonable

---

Philips then withdrew its motion to dismiss and agreed to allow Cinram to file its Second Amended Answer and Counterclaims. Contrary to Philips' assertions, Cinram did not repeatedly attempt to "beef up" its counterclaims. Rather, Philips' ongoing attempts to harm Cinram's business relationships as well as Philips' refusal to identify the entity that controlled its website forced Cinram to amend. Philips has since filed a second motion to dismiss Cinram's counterclaims for patent misuse and tortious interference. That motion, filed on August 4, 2008, is substantially identical to Philips' motion in this case. *See Philips v. Cinram,* 08cv0515(CS)Dkt. No. 45.

inferences that can be drawn from the allegations should be drawn in favor of the pleader. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

### B.     Philips Misused the '846 Patent, as Defendants Have Properly Alleged

Philips has established a patent pool of patents owned by different companies, and acts on behalf of the pool members to extract royalties for the manufacture and sale of CDs to the extent they use one or more "essential" patents in the pool.  Philips argues that it could not have misused the '846 Patent even if that patent is not "essential" (so it should not have been maintained in the patent pool) and is the only remaining patent for which Philips seeks to extract royalties on behalf of the patent pool.   Philips relies for this remarkable contention solely on a case that actually refutes it: *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005).  Moreover, Philips ignores the facts stated in the counterclaims that clearly allege that Philips *continues* to falsely claim that the '846 Patent is "essential" and, therefore, should remain in the pool, even after it knew or should have known that it is not.

Defendants' allege that this constitutes patent misuse, as established in *Brulotte v. Thys. Co.*, 379 U.S. 29 (1964) (holding that seeking royalties for a patent pool wherein none of the subsisting patents are actually used constitutes patent misuse), and that the effect of the misuse is to wrongfully extend the life and scope of the patent pool when no "essential" pool patent actually applies to the products at issue or is used by Defendants.

The key inquiry to determining if there is patent misuse "is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998).  In this case, the Counterclaim allegations demonstrate that Defendants' misuse claim is grounded on Philips' wrongful misrepresentation in licenses and

side letters between Philips and the Defendants, who manufacture CDs, which representations concern the '846 Patent and improperly seek to extend the life of a moribund patent pool. (FAC[3], ¶¶30-35). The licenses and side letters and Philips' subsequent actions maintain that the '846 Patent is "essential" for making CDs, meaning that there is no alternative to using the patent to make CDs. (FAC, ¶44, 45). The license agreements also state that a royalty payment would be due for each CD sold in a country where a Licensed Patent "essential" to making a CD exists. Defendants aver that the '846 Patent is not "essential" because for years they have been using a commercially viable, practicable alternative to the '846 Patent. (Counterclaim ¶26).

Defendants have also pled that Philips sent false and misleading letters to Defendants' customers, who purchase licensed CDs from Defendants, threatening those customers with suits for infringing the '846 Patent based on false allegations that licensed sales can constitute infringement and that the '846 Patent remains "essential."[4] (Counterclaim ¶¶28-30, 39). Philips included statements in these letters that imply that Defendant manufacturers are "deadbeats" who do not pay any royalties under their license agreements, even though Defendants continue to pay royalties to Philips on other patents for other types of CDs that are not involved in this action. (Counterclaim ¶¶27, 40). Moreover, the non-entity website manipulator Philips IPS improperly removed the manufacturer Defendants from the list of licensees under the '846 Patent, thereby falsely informing the public that those who were removed are not licensed under the '846 Patent. (Counterclaim ¶ 40). Contrary to the arguments made in Philips' motion to dismiss, the Defendants alleged that Philips knew these actions were improper, but undertook them anyway to harm manufacturer Defendants' business if they did not pay royalties on the '846 Patent,

---

[3] "FAC" refers to Philips' First Amended Complaint, filed June 12, 2008, Dkt. 8.
[4] All of Defendant manufacturers remain licensed under the '846 Patent and therefore their sales are authorized and non-infringing sales. Thus, their customers have purchased licensed CDs and cannot be subject to the infringement charge with which Philips has threatened them. *See Quanta Computer, Inc. v. LG Electronics, Inc.,* 128 S.Ct. 2109 (2008).

which they do not use and which Philips knew was not "essential." (Counterclaim ¶¶ 36, 37, 41). These knowingly false statements threatening customers of the manufacturer Defendants with infringement damages based on the allegedly "essential" '846 Patent have anticompetitive effects because they inhibit the ability of manufacturer Defendants to compete with CD manufacturers that Philips has not threatened. The manufacturer Defendants are forced to either pay for a patent that they do not use or lose customers who are fearful of ruinous, but meritless, litigation with Philips. (Counterclaim ¶¶ 30, 36-38). These activities as averred by Defendants demonstrate the effects of the action that Philips has knowingly and willfully undertaken and which constitute patent misuse.

Philips bases its motion to dismiss Defendants' patent misuse claim on *U.S. Philips Corp. v. Int'l Trade Comm'n*, 424 F.3d 1179 (Fed. Cir. 2005) (the "ITC Decision"). That was a tying case that involved a patent pool organized by Philips for different products, not involved in this lawsuit.[5] The patent pool in the ITC action admittedly contained "essential patents." Accordingly, the royalty in that case would not change by the wrongful addition of an additional, non-essential patent and for that reason the court did not find misuse.

Philips overlooks that the ITC Decision recognized the fundamental difference between, on the one hand, the addition of a non-essential patent to a pool that contains essential patents (where there is no financial consequence) and, on the other hand, a case in which the allegedly "essential" patent is the only basis for a wrongful attempt to extract royalties by extending the temporal scope of the pool. The ITC decision expressly stated that, as no party had addressed the impact of a potential temporal extension of the royalty obligation in a situation in which the only unexpired patent remaining in the pool was a patent that was not in fact essential, this issue was not being addressed  *Id.* at 1195, FN 8.

---

[5] The patents in the pool involved in the ITC action pertained to recordable/rewritable CDs.

In the case before this Court, the '846 Patent is the only relevant patent left in the pool.[6] The other pool patents have expired or do not apply for other reasons. Here, only the '846 Patent can extend the life and scope of the patent pool. Plaintiffs claim no royalty for the types of CDs at issue under any other patent. Defendants' misuse counterclaim alleges that Philips misused the '846 Patent by knowingly misrepresenting that it is "essential" in a wrongful attempt to temporally extend the expired patents in the pool and to extend their scope to the products at issue. The Supreme Court has held that this very conduct constitutes patent misuse. *Brulotte v. Thys. Co.*, 379 U.S. 29 (1964) (holding that seeking royalties for a patent pool wherein none of the subsisting patents are actually used constitutes patent misuse). In fact, the ITC Decision relied on by Philips cites *Brulotte* for this proposition.

Philips also attempts to shield its wrongful demands for royalties under the '846 Patent based on maintaining that the patent is "essential" by relying on alleged "essentiality" at the time the license agreements were signed. (Philips' Brief at 4). However, Philips ignores the fact that even now it *continues* to maintain that the '846 Patent is "essential" when it threatens Defendants' customers with infringement lawsuits if they do not agree to pay for this unused patent or, alternatively, switch to suppliers that Philips selects. (Counterclaim, ¶¶ 30, 36-37). Philips' continued attempts to extend the temporal scope of its patent pool, now that Philips knows or should know that the '846 Patent is not "essential," constitutes patent misuse. (Counterclaim, ¶¶ 36-42).

Philips also contends, disingenuously, that the averments contained in Count III of Defendants' Counterclaims are insufficient under Federal Rule 12(b)6 because manufacturing Defendants' customers have not been identified, the suppliers to whom Philips is diverting sales

---

[6] A second patent in the Patent Pool, U.S. Patent No. 5,305,301 (the "'301 Patent"), which is not asserted by Philips in this action, expires after the '846 Patent. Although Philips has also listed the '301 Patent as "essential," it has taken no action to enforce this patent.

have not been disclosed, and a nexus between Philips' patent misuse and the harm suffered by Defendants has not been averred. These contentions are simply untrue. Philips lists the name of one of manufacturing Defendants' alleged customers, who is alleged to have infringed the '846 Patent, in its own complaint. FAC ¶ 9. Philips went beyond just threatening this alleged customer by actually naming it as party to a lawsuit, wherein Philips explicitly reiterated its position that royalties are due under the '846 Patent because it is "essential." Philips cannot truthfully claim that it is unaware of which customers were threatened by Philips' actions, nor can it legitimately claim that Defendants were not harmed by these actions, when Defendants are currently defending a lawsuit to which one of these alleged customers is a party. Moreover, Philips claims that it is unaware of which suppliers it diverted Defendants' customers to (Philips' Brief at 5) even though Philips identified by name the alternate supplier in a letter written to a CD distributor and the supplier to whom the distributor was directed was the other member of the patent pool that Philips controls. (Counterclaim ¶52). Philips' claim that it is unaware of the alternate supplier's identity is untenable.

Philips also claims that it has "purged" its patent misuse as of a March 7, 2008 hearing that was held in the Philips v. Cinram case. The March 7, 2008 hearing to which Philips refers was held at the request of Cinram, who sought to enjoin Philips from sending letters to Cinram's customers containing baseless and demonstrably untrue allegations, thereby harming Cinram's business. At the direction of the court and following a discussion among the parties, Philips agreed to send new letters to those customers that did not contain the false statements. Philips does not state that it actually sent such letters out and Philips still has not retracted the false and misleading statements it included in its original threatening letters. (Philips' Brief at 7-8 (quoting Cinram, Dkt. 28 at 8)). Philips cannot legitimately claim that it "purged" these false

statements simply because if new letters were sent out, they did not reiterate the false statements. The doctrine of patent misuse would be transformed into a toothless defense if that was all that was required to "purge" a patent holder's misuse.

For all of these reasons, Philips' motion to dismiss Defendants' patent misuse claim should be dismissed.

## C. Defendants Have Pled All of the Elements Required to Maintain a Claim For Tortious Interference

Philips contends that the averments of tortious interference with business relationships contained in Counts IV and V of Defendants' counterclaims are insufficient under Federal Rule 12(b)(6) and should be dismissed. Specifically, Philips argues that any controversy regarding Count IV has been resolved, business relationships have not been identified, and Philips' knowledge of business relationships and Philips' intent to interfere with them have not been averred.

Under New York law, a claim of tortious interference with business relations requires a plaintiff to allege that "(1) there is a business relationship between the plaintiff and a third party; (2) the defendant, knowing of that relationship, intentionally interferes with it; (3) the defendant acts with the sole purpose of harming the plaintiff, or failing that level of malice, uses dishonest, unfair, or improper means; and (4) the relationship is injured." *Goldhirsh Group v. Alpert*, 107 F.3d 105, 108-109 (2d Cir. 1997). Contrary to Philips' contentions, Defendants have pled all of these elements. Philips' claim that it was unaware of the manufacturer Defendants' business relationships with their customers when Philips falsely told these customers that CD-Discs purchased from Defendants are unlicensed is inexplicable in light of the fact that Philips is currently suing three such customers in the present lawsuit for infringement of the '846 Patent. Likewise, the present lawsuit against these three customers of Defendants clearly demonstrates

that this claim relates to an actual controversy.  Moreover, as stated above, Philips' argument that Cinram repeatedly amended its counterclaims in an attempt to "beef them up" is disingenuous as Philips' removal of Cinram from the Philips IPS website, as well as Philips' refusal to identify which Philips entity controlled that website, is what forced Cinram to amend its counterclaims. Furthermore, any amendments made by Cinram are irrelevant to this action as Cinram is not a party to the present lawsuit.

### 1. The Controversy Has Not Been Resolved

Philips' interference with manufacturer Defendants' relationships with their customers has not been resolved.  Philips argues that its agreement to stop sending objectively baseless letters to CD customers, such as Eagles and H&R Block, somehow resolved the controversy such that it is no longer live.  Philips ignores the fact that it has *already* harmed the alleged business relationships, for which redress is sought.  Moreover, as discussed above, Philips refused to retract, in communications to the recipients of the harmful letters, the false and misleading representations in those letters. (Plaintiffs' Memo at 7-8).  Defendants' relationships continue to be harmed as the false and misleading threats stand.

Philips also states that its letters were sent to Cinram's customers, not Defendants', who "have no reason to believe that **any** such problem will **ever** arise between them and Philips." (Plaintiff's Brief at 12).  Philips ignores the fact that it has intimidated not only these three customers but the entire similarly situated industry, and that it expressly declined an invitation to represent at the hearing in the Cinram case that these were the only three letters it has sent.  At this early stage of litigation, discovery has not yet commenced to establish the scope of the Philips misrepresentation to the industry.  Philips' claim that there is no longer a case or controversy must fail.

### 2. Defendants Have Alleged That Business Relations Have Been Damaged

Philips argues that the tortious interference claims alleged against them in Counts IV and V should be dismissed because Defendants "have not and cannot" plead that a business relationship has been damaged. (Plaintiffs' Brief at 12). Philips ignores the allegations that Philips had knowledge of Defendants' business relationships with their customers and potential customers, such as Eagles Recording Company, H&R Block and Digital Excellence, all of whom purchase CD-Discs made by the processes used by manufacturer Defendants. (Counterclaim ¶¶ 44, 45, 52, 53, 57).

Philips complains that the allegations do not identify customers who are solely the customers of the manufacturer Defendants. (Philips' Brief at 12). However, the "fact that [a] complaint fails to identify the relationships that were interfered with is of no consequence" at this stage of litigation. *Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228, 236-37 (S.D.N.Y. 2002). Instead, the party alleging this tort "may use the discovery period to identify the specific relationships at issue." *SLM, Inc. v. Shelbud Prod. Corp.*, No. 92 Civ. 3073, 1993 US DIST LEXIS 5171, at *5 (S.D.N.Y. Apr. 20, 1993).

Courts have routinely refused to dismiss counts for tortious interference with business relations simply because specific business relations were not disclosed. *See Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F.Supp. 2d 301, 335 (S.D.N.Y. 2003) (refusing to dismiss a count for tortious interference with business relations where specific relations weren't identified, holding that "it would be unreasonable to require more specific pleadings prior to discovery."). A party "need only meet the pleading requirements of Rule 8(a) with respect to this claim." *In re Verestar, Inc.*, 343 B.R. 444, 485 (Bankr. S.D.N.Y. 2006) (stating that even though the party asserting the claim "has not identified all relevant business relations by name, it has alleged facts

demonstrating interference with [the aggrieved party's] relations with its vendors and customers. These allegations fairly place [the interfering party] on notice, and there can be further identification of the specific contracts and relationships at issue during the course of discovery.").

Philips' reliance on *Envirosource, Inc. v. Horsehead Res. Dev. Co.*, No. 95 Civ. 5106 (TPG), 1997 US DIST LEXIS 12570, is misplaced because in that case a party had been put on notice by a prior ruling in the case to identify current business relationships but, after months of discovery, sought to add a counterclaim that still referred to speculative potential future customers. (Plaintiffs Brief at 12). In the case before this Court, Defendants identified current customers, including Eagles, H&R Block, and Digital Excellence, and alleged that their relationships with such customers were wrongfully harmed by false and misleading threatening letters by Philips to such customers. (Counterclaim ¶¶ 44, 45, 52, 53, 57).

### 3. Philips Had Knowledge Of Defendants' Customers and Intentionally Took Actions That it Knew Would Harm Defendants' Relationships With These Customers

Philips misconstrues the "intent" element of the cause of action by reading a requirement for malicious conduct into it. However, no such requirement exists. Under New York law, Defendants need only allege that Philips intended to take the actions that resulted in the interference, with the knowledge that the interference is substantially certain to occur as a result of its actions. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 189 (1980) (relying on the Restatement (Second) of Torts). This is what Defendants have alleged. At no point has Philips asserted that its actions were unintentional. For instance, Philips does not argue that Defendants' names were inadvertently removed from the Philips IPS website or that Philips was unaware that Defendants' names have been removed. Nor does Philips dispute that

it intentionally sent the misleading letters to H&R Block, Eagles, and Digital Excellence; in fact, Philips still seems to think it had a right to send such letters. (Philips' Brief at 16). Moreover, some of Philips' "patent notice letters" were intended to completely destroy the relationship with a customer by, *inter alia*, diverting the customer to other suppliers of CD-Discs. (Counterclaim ¶¶ 30, 36, 43. Accordingly, Defendants allegations meet the "knowledge" and "intent" requirements of the second element of their tortious interference claims.

### 4.     Philips' Patent "Notice" Letters Were Objectively Baseless

Although patent owners may send factually accurate patent notice letters to potential infringers in good faith, they may *not* send knowingly false letters to customers in an attempt to coerce them into paying royalties for a patent that is not utilized, which is precisely what Philips did.

Defendants do not dispute that a patent holder can write to potential infringers to inform them "of the existence of its patent." *GP Indus., Inc. v. Eran Indus., Inc.*, 500 F.3d 1369, 1374 (Fed. Cir. 2007). Courts will not prevent a patent holder from sending such letters. *See, e.g. Golan v. Pingel Enter., Inc.,* 310F.3d 1360, 1371 (Fed.Cir. 2002); *Globetrotter Software, Inc. v. Elan Computer Group, Inc*., 362 F.3d 1367, 1377 (Fed. Cir. 2004). However, courts have routinely granted injunctions against sending letters that include objectively baseless threats against customers. *See, e.g. Etna Products Co., Inc. v. Harold Finney*, 1993 U.S. Dist. LEXIS 2796, *9-10 (S.D.N.Y. 1993); *Lucasey Mfg. Corp. v. Anchor Pad Intern., Inc.*, 698 F.Supp. 190, 193 (N.D. Cal. 1988); *T.J. Roaco, Ltd. v. Syntex Pharmaceuticals Int'l, Ltd.*, 227 U.S.P.Q. 1033, 1036 (D.N.J. 1985).

In this case, the letters sent by Philips contained numerous false statements and other misleading allegations. Contrary to Philips's contentions in its motion to dismiss, these letters

are baseless not only because they falsely assert that the '846 Patent is essential but also because of numerous other objectively false statements. For instance, one such letter falsely states that U.S. Patent No. 5,790,512 (the "'512 Patent") is "essential" for the manufacture of CDs, even though Philips' own publications acknowledge that the '512 Patent does not apply to CDs of the type distributed by the recipient of that letter. (Counterclaim ¶¶47-49). Some of the letters sent by Philips also falsely imply that Defendants do not pay royalties for CDs, even though Defendants continue to make royalty payments to Philips to this day under the same license agreements, for CDs not involved in this lawsuit. (Counterclaim ¶51, 52).

These objectively baseless comments go well beyond what is permitted by *GP Indus., Inc.* Therefore, as these letters can form the basis of a tortious interference claim, Philips' motion to dismiss on these grounds should be denied.

### III.    CONCLUSION

For the reasons stated above, Defendants' counter claims state sufficient facts to support their claims for patent misuse and tortious interference with business relationships. Accordingly, Philips' Motion to Dismiss these claims should be denied.

Respectfully submitted,

COOPER & DUNHAM LLP

Dated: August 14, 2008

 s/ Ivan Kavrukov              _
Ivan Kavrukov (IK 4452)
William E. Pelton (WP 1850)
Tonia A. Sayour (TS 7208)
Gregory J. Carbo (GC 8459)
1185 Avenue of the Americas
New York, New York 10036
Tel: (212) 278-0400
Fax: (212) 391-7550
ikavrukov@cooperdunham.com
wpelton@cooperdunham.com
tsayour@cooperdunham.com
gcarbo@cooperdunham.com

Attorneys for Defendants Entertainment Distribution Company (USA) LLC, and Entertainment Distribution Company.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of August, 2008, I electronically filed the foregoing **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PHILIPS' MOTION TO DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Edward D. Johnson
>MAYER BROWN LLP
>Two Palo Alto Square, Suite 300
>3000 El Camino Real
>Palo Alto, California 94306-2112
>wjohnson@mayerbrown.com
>
>Vince P. Kovalick
>John F. Hornick
>Samuel C. Bass
>FINNEGAN, HENDERSON, FARABOW,
>   GARRETT & DUNNER, L.L.P.
>901 New York Avenue, N.W.
>Washington, D.C. 20001
>vince.kovalick@finnegan.com
>John.Hornick@finnegan.com
>Samuel.Bass@finnegan.com
>
>Christopher J. Houpt
>MAYER BROWN LLP
>1675 Broadway
>New York, New York 10019
>choupt@mayerbrown.com

                                                                              _s/ Ivan Kavrukov_____
                                                                              Ivan Kavrukov