# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KONINKLIJKE PHILIPS ELECTRONICS N.V. and U.S. PHILIPS CORPORATION,**<br><br>        **Plaintiffs,**<br><br>    v.<br>**ENTERTAINMENT DISTRIBUTION COMPANY (USA) LLC; ENTERTAINMENT DISTRIBUTION COMPANY; UNIVERSAL MUSIC GROUP, INC.; UMG MANUFACTURING & LOGISTICS, INC.; JAMES CAPARRO, an Individual; JORDAN COPLAND, an Individual; and John Does No. 1 through 100,**<br><br>        **Defendants and Counterclaim Plaintiffs.** | Civil Action No.08-cv-4070 (SCR)<br><br>ECF Case |

**KONINKLIJKE PHILIPS ELECTRONICS N.V.'s AND U.S. PHILIPS CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS**

## TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................1

II.   ARGUMENT ................................................................................................................1

      A.    U.S. Philips v. ITC Eliminates Any Possible Patent Misuse Defense By
            The EDC Defendants ................................................................................................1

      B.    EDC Defendants Have Not Shown That They Alleged The Elements Of
            Patent Misuse ........................................................................................................4

      C.    EDC Defendants' Tortious Interference With Business Relations
            Counterclaims Must Be Dismissed ..........................................................................7

            1.    EDC Defendants Fail To Identify Any Damaged Business
                  Relationships ........................................................................................8

            2.    EDC Defendants Misconstrue Philips' "Intent" Argument .......................10

III.  CONCLUSION ...........................................................................................................11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Advanced Cardiovascular Systems, Inc. v. Scimed Systems, Inc.*,
40 U.S.P.Q.2d 1291, 1996 WL 467277 (N.D. Cal. 1996) ............................................................5

*Allen v. WestPoint-Pepperell, Inc.*,
945 F.2d 40 (2d Cir. 1991)..................................................................................................6

*Bell Atlantic Corp. v. Twombly* ,
127 S.Ct. 1955 (2007).........................................................................................................6

*Brulotte v. Thys Co.*,
*379 U.S. 29, 13 L. Ed. 2d 99, 85 S. Ct. 176 (1964)*...................................................2

*Faulkner v. Beer*,
463 F.3d 130 (2d Cir. 2006)................................................................................................6

*U.S. Philips Corp. v. International Trade Commission*,
424 F.3d 1179 (Fed. Cir. 2005)....................................................................................1, 3

*Reading International, Inc. v. Oaktree Capital Management LLC*,
317 F.Supp.2d 301 (S.D.N.Y. 2003)...............................................................................10

*Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*,
202 F. Supp.2d 228 (S.D.N.Y. 2002).......................................................................8, 9, 10

*Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.*,
2004 WL 1872707 (S.D.N.Y. 2004)...................................................................................4

I.      **INTRODUCTION**

In their opposition to Plaintiffs Koninklijke Philips Electronics N.V.'s and U.S. Philips

Corporation's (collectively "Philips") Motion to Dismiss, Defendants Entertainment Distribution

Company (USA) LLC ("EDC LLC") and Entertainment Distribution Company ("EDC"), who

are collectively referred to as the "EDC Defendants," assert a variety of arguments to bootstrap

their deficient patent misuse and tortious interference counterclaims, but fail to respond to

Philips' arguments.  EDC Defendants respond by eluding to facts absent from their counterclaim

for patent misuse, and by misstating the law applicable to their tortious interference

counterclaim.  As demonstrated below and in Philips' opening brief, EDC Defendants have not

stated their counterclaims under applicable law, and therefore Counterclaim Counts III, IV, and

V-- which counsel have now unsuccessfully tried to state three times -- should be dismissed with

prejudice.

II.     **ARGUMENT**

    A.      **U.S. Philips v. ITC Eliminates Any Possible Patent Misuse Defense By The EDC Defendants**

The EDC Defendants erroneously contend that *U.S. Philips Corp. v. Int'l Trade Comm'n*,

424 F.3d 1179 (Fed. Cir. 2005), actually refutes Philips' position.  As explained in Philips'

opening brief, this case and *U.S. Philips* both involve a package license for essential patents, and

therefore the *U.S. Philips'* ruling has as much force here as it did there.  The fact that all of the

relevant patents in the package license have expired, except the '846 Patent in suit (admitted by

EDC Defendants in their Counterclaim ¶ 25), is irrelevant.  In ¶ 26 of the patent misuse

counterclaim, EDC Defendants allege not that Philips improperly designated the '846 Patent as

essential, but that it is no longer essential because they allegedly found an economical alternative

method to comply with the Standard Specifications without practicing the '846 Patent.  How can

this alleged innovation turn Philips' assertion of the '846 Patent's essentiality into patent misuse?

The answer is that it cannot.

> In support of their contention, the EDC Defendants assert:
>
>> Philips argues that it could not have misused the '846 Patent even if the patent is not "essential" (so it should not have been maintained in the patent pool) and is the only remaining patent for which Philips seeks to extract royalties on behalf of the patent pool. Philips relies for this remarkable contention solely on a case that actually refutes it: *U.S. Philips* . . .
>>
>>       . . .
>>
>> . . .The patent pool [in *U.S. Philips*] admittedly contained "essential patents." Accordingly, the royalty in that case would not change by the wrongful addition of an additional, non-essential patent and for that reason the court did not find misuse.
>>
>> Philips overlooks that the ITC decision recognized the fundamental difference between, on the one hand, the addition of a non-essential patent to a pool that contains essential patents (where there is no financial consequence) and, on the other hand, a case in which the allegedly "essential" patent is the only basis for a wrongful attempt to extract royalties by extending the temporal scope of the pool. The ITC decision expressly stated that, as no party had addressed the impact of a potential temporal extension of the royalty obligation in a situation in which the only unexpired patent remaining in the pool was a patent that was not in fact essential, this issue was not being addressed.

(Dkt 31 at 3, 5).

> The EDC Defendants are simply wrong about the *U.S. Philips* case. In fact, footnote 8 of

*U.S. Philips* states as follows:

>> In its amicus curiae brief, the New York Intellectual Property Association notes that, unlike the other three allegedly nonessential patents, the Iwasaki patent would expire after all of the undisputedly essential patents. As a result, the presence of the Iwasaki patent in a patent licensing package could have the effect of extending the obligation to pay royalties beyond the expiration date of the "essential" patents. A provision requiring that royalties be paid beyond the life of a patent has been held to be unenforceable. *See Brulotte v. Thys Co., 379 U.S. 29, 30, 13 L. Ed. 2d 99, 85 S. Ct. 176 (1964).* However, because neither the Commission nor the administrative law judge addressed the impact of that potential temporal extension of the royalty obligation, and none of the parties addressed that issue on appeal in their briefs, we do not address the issue here.

> But the court did address the situation before this Court: a patent identified as essential

under a package license, which was accepted by the licensee as essential for a period of time, is

later challenged by the licensee as no longer essential because of the **licensee's** alleged

technological innovations that render inessential the admittedly once-essential patent.

Specifically, the *U.S. Philips* court stated as follows with respect to *per se* patent misuse:

> Under the Commission's approach, an agreement that was perfectly lawful when executed could be challenged as per se patent misuse due to developments in the technology of which the patentees are unaware, or which have just become commercially viable. Such a rule would make patents subject to being declared unenforceable due to developments that occurred after execution of the license or were unknown to the parties at the time of licensing. Not only would such a rule render licenses subject to invalidation on grounds unknown at the time of licensing, but it would also provide a strong incentive to litigation by any licensee, since the reward for showing that even a single license in a package was "nonessential" would be to render all the patents in the package unenforceable. For that reason as well, we reject the Commission's ruling that package agreements of the sort entered into by Philips and the intervenors must be invalidated on the ground that they constitute per se patent misuse.

424 F.3d at 1197. With respect to patent misuse under a rule of reason analysis, the court also

said:

> The Commission also did not address the problem, noted above, that changes in the technology for manufacturing compact discs could render some patents that were indisputably essential at the time of licensing arguably nonessential at some later point in the life of the license. To hold that a licensing agreement that satisfied the rule of reason when executed became unreasonable at some later point because of technological development would introduce substantial uncertainty into the market and displace settled commercial arrangements in favor of uncertainty that could only be resolved through expensive litigation.

*Id.* at 1198.

These principles cannot change if the formerly essential patent happens to be the last

patent in a package license to expire. Thus, even in the unlikely event that the '846 Patent is

found by this Court no longer to be essential, EDC Defendants may not be in breach of the

license agreement, may not owe delinquent royalties, and may not be infringing the '846 Patent,

but Philips will **not** have committed patent misuse. In footnote 8 of *U.S. Philips*, the court did

not say that a formerly essential **patent** would be unenforceable if it had the effect of extending

the obligation to pay royalties beyond the expiration of the essential patents in a package license.

Rather, the court said that "A **provision** requiring that royalties be paid beyond the life of a

patent has been held to be unenforceable." (Emphasis added). Thus, in view of the principles

announced in *U.S. Philips*, EDC Defendants have not and cannot state a patent misuse counterclaim.

EDC Defendants also argue that Philips is misusing the '846 Patent because it now knows the patent is not essential but did not remove it from the pool.  (Opp. at 3, 5, 6).  Philips knows nothing of the sort.  The EDC Defendants, as well as the manufacturing defendants in the other three lawsuits on the '846 Patent co-pending in this Court, stopped paying royalties based on a legal opinion prepared by EDC Defendants' counsel, Cooper & Dunham.  Philips has never seen that opinion, and therefore does not know the manufacturers' rationale for believing that the '846 Patent is no longer essential.  In the Cinram case pending before Judge Seibel, Philips attempted to subpoena the opinion directly from Cooper & Dunham.  Cooper & Dunham moved to quash, arguing that because Cinram had not decided whether to rely on the opinion as a defense, providing the opinion to Philips would be premature.  (Civ. No. 08 CV 515 CS, Dkt. 31).  As the result of a July 11, 2008 conference with Magistrate Judge Fox, Philips withdrew the subpoena, without prejudice to seek the opinion later in discovery.  Thus, there is no basis for EDC Defendants' argument that Philips knows that the '846 Patent is no longer essential.

### B. EDC Defendants Have Not Shown That They Alleged The Elements Of Patent Misuse

EDC Defendants' counterclaim for declaratory judgment of patent misuse should also be dismissed because they failed to plead the necessary elements of such a claim.  In their opposition, EDC Defendants cite conclusory allegations from their counterclaim in an attempt to breath life into the claim.  But conclusory allegations are not enough.  In *Takeda Chemical Industries, Ltd. v. Alphapharm Pty., Ltd.,* 2004 WL 1872707 (S.D.N.Y. 2004), a plaintiff moved to strike a patent misuse affirmative defense. The court held that the defendants' allegations failed to meet the Rule 8 requirements of notice pleading because "the defendants merely parrot

4

the elements of a claim for patent misuse, without alleging even general facts to support that claim." *Id*. at *1. The Court went on to note that conclusory references to "anti-competitive effect" and "improper restraint on competition" were insufficient to give the plaintiff sufficient notice of the alleged misconduct. *Id*.  Additionally, a federal court in California held that "Given the specific exceptions to patent misuse provided by Congress, defendant must plead more than a **conclusory** allegation of patent misuse in order to provide fair notice of the nature of the defense.  Defendant must state how the plaintiff has attempted to broadly and impermissibly construe its patent such as to cause an anticompetitive effect…." *Advanced Cardiovascular Systems, Inc. v. Scimed Systems, Inc.*, 40 U.S.P.Q.2d 1291, 1996 WL 467277, *3 (N.D. Cal. 1996) (emphasis added).  These are precisely the defects of EDC Defendants' patent misuse counterclaim.  EDC Defendants attempt to bootstrap their opposition by introducing new allegations instead of showing where and how they assert the necessary facts in their counterclaim.

EDC Defendants' failure to address the shortcomings of the counterclaim, as highlighted by Philips, shows that they have no response and that their patent misuse defense is fatally flawed.  Specifically, EDC Defendants failed to address the deficiencies in Counterclaim ¶ 36 ("The effect of plaintiffs' wrongful behavior is to restrain competition in the market of the CD types at issue by diverting actual or potential customers of the Plaintiffs-in-Counterclaim to other suppliers on false pretenses, with the intention of putting Plaintiffs-in-Counterclaim out of the business of making and selling the CD types at issue").  Nowhere in their counterclaim did EDC Defendants describe any diverted customers that have gone to other suppliers or the alleged false pretenses, or even the link between the alleged patent misuse and the alleged diversion and damage.  As addressed in greater detail in Philips' opening brief, EDC Defendants' generalized

allegations do not suffice as adequate pleading, which requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly* , 127 S.Ct. 1955, 1974 (2007).

Moreover, other than stating that Philips "has attempted to divert an actual or potential customer of the [EDC Defendants] to another supplier of CDs," EDC Defendants' counterclaim is silent with respect to any 1) allegations of an anticompetitive effect, 2) facts supporting such an allegation, and 3) a nexus between their allegation and the alleged patent misuse. This is addressed in greater detail in Philips' opening brief.

Rather than addressing such shortcomings, EDC Defendants argued that:

Philips went beyond just threatening this alleged customer by actually naming it as a party to a lawsuit, wherein Philips explicitly reiterated its position that royalties are due under the '846 Patent because it is "essential." Philips cannot truthfully claim that it is unaware of which customers were threatened by Philips' actions, nor can it legitimately claim that Defendants were not harmed by these actions, when they are currently defending a lawsuit to which one of these alleged customers is a party.

(Dkt. 31 at 7). Assuming *arguendo* that C&D Defendants' contention is accurate, which it is not, EDC Defendants failed to plead such facts in their counterclaim. It is irrelevant for purposes of this motion what Philips was or was not aware of with respect to EDC Defendants' supposed customer. The question for this Court is "what did they plead?" A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir. 1991); *accord, e.g.*, *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Despite Philips' Complaint against one of the EDC Defendants' customers, EDC Defendants obviously didn't name it in their

counterclaim because they cannot truthfully plead any diversion, anticompetitive effect, supporting facts, a nexus, or damages.[1]

Thus, for the reasons presented in Philips' opening brief, EDC Defendants' counterclaim fails to state facts making their bare allegations plausible on their face, or to link any alleged customer diversion to patent misuse. Because EDC Defendants' counsel have now tried and failed three times to assert this counterclaim, EDC Defendants' patent misuse counterclaim should be dismissed with prejudice.

### C. EDC Defendants' Tortious Interference With Business Relations Counterclaims Must Be Dismissed

For the reasons presented in Philips' opening brief, there is no case or controversy between Philips and EDC Defendants regarding Counterclaim Count IV and V. EDC Defendants respond, circularly, that "Philips ignores the fact that it has *already* harmed the alleged business relationships, for which redress is sought" (Opp. at 9, emphasis in original). But it is EDC Defendants who ignore the facts: the dispute between Philips and Cinram over Philips' patent notice letters resolved any such harm, and EDC Defendants have not pleaded any of their own "business relationships, for which redress is sought." Thus, Count IV should be dismissed with prejudice for the reasons set forth in Philips' opening brief.[2]

EDC Defendants have also failed to show that Philips' patent notice letters were objectively baseless. EDC Defendants made virtually no attempt to respond to Philips'

---

[1]    EDC Defendants state in one place that Philips named one customer in its Complaint (Opp. at 7), and in another place that "Philips is currently suing three such customers in the present lawsuit (Opp. at 8). Despite such inconsistency, they failed to name such one or three alleged customers in either their counterclaim or their opposition.

[2]    For the same reason, any alleged patent misuse based on such letters has been purged, as discussed in detail in Philips' opening brief.

arguments on this point, and therefore Philips stands on the arguments set forth in its opening brief.

EDC Defendants also have not pleaded the elements of a claim of tortious interference with business relationships. As discussed in Philips' opening brief, and as EDC Defendants admitted (Opp. at 8), New York law requires four elements for a properly pleaded claim for tortious interference with business relations. EDC Defendants must allege 1) that there is a business relationship between the plaintiff and third party; 2) the defendant, knowing of the relationship, intentionally interferes with it; 3) the defendants act with the sole purpose of harming the Plaintiff, or failing that level of malice, uses dishonest, unfair, or improper means; and 4) the relationship is injured. As described below, not only have the EDC Defendants misstated the law, they have also failed to plead sufficient facts to sustain their claim.

### 1. EDC Defendants Fail To Identify Any Damaged Business Relationships

EDC Defendants have not pointed to any allegation in the counterclaim identifying any existing business relationship between any one of them and a third party. The counterclaim does not allege that Eagles Recording Company, H&R Block, and/or Digital Excellence <u>are</u> customers of the EDC Defendants. Rather, the allegations in the counterclaim describe these third parties, generally, as customers for CD Discs. Facts describing <u>potential customers</u> are insufficient as a matter of law for withstanding a motion to dismiss because these "relationships" are non-existent. *Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228, 236 (S.D.N.Y. 2002) For at least this reason, EDC Defendants' counterclaim must be dismissed.

EDC Defendants cannot claim that Eagles Recording Company is its customer. The reason is that their counsel (Copper & Dunham) made a contrary representation to this Court in a related case. Copper & Dunham also represents Cinram International Inc. in this Court (Civil

8

Action No. 08 CV 515 CS).  In a hearing on the record before the late Judge Charles Brieant, Cooper & Dunham represented to the Court that Eagles Recording Company is Cinram's customer (Trans. dated 3/7/08 at 2,3).  Therefore, for the EDC Defendants to represent that Eagles Recording Company is its customer would be disingenuous.  The fact remains that the EDC Defendants have not identified any of their own customers in the tortious interference counterclaims.

Moreover, EDC Defendants attempt to justify their failure to plead crucial facts by arguing that "the fact that the complaint fails to identify the relationships that were interfered with is of no consequence at this stage of litigation," citing  *Shred-It, USA, Inc. v. Mobile Data Shred, Inc.*, 202 F. Supp.2d 228, 236 (S.D.N.Y. 2002).  However, EDC Defendants confuse the elements of a claim for interference with actual business relations, which their counterclaim attempts to plead, and the elements of a claim for interference with prospective business relations.  *Shred-It* actually supports Philips' position that the EDC Defendants must identify a valid third party contract that was breached, or a specific business relationship that was damaged as a result of Philips' alleged conduct.  In examining the defendant's Complaint, the *Shred-It* Court stated that "it is unclear from the complaint whether Shred-It alleges interference with existing contractual relations or prospective business relations. Because Count Five does not identify any contract that was interfered with, the Court presumes that Shred-It's claim in this count is based on interference with prospective business relations."  *Id.*  To support their position, the EDC Defendants quote the portion of the Shred-It opinion stating that "The fact that the complaint fails to identify the relationships that were interfered with is of no consequence," (Dkt. 30 at 10), but they omit the preceding sentence in the opinion, which states that "Shred-It's

complaint states a proper claim for tortious interference with **prospective business relations**." *Shred-It, USA, Inc.*, 202 F.Supp.2d at 237 (emphasis added).

EDC Defendants' citation of *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F.Supp.2d 301, 335 (S.D.N.Y. 2003), for the proposition that courts routinely refuse to dismiss counts for tortious interference with business relations simply because specific business relations were not disclosed before discovery, is also misplaced. The *Reading Int'l c*ourt found that because plaintiffs had alleged facts that would satisfy all four elements of wrongful interference with **prospective contractual relations**, defendants' motion to dismiss plaintiffs' twelfth claim for relief was denied. *Reading Int'l, Inc.,* 317 F.Supp.2d at 335. Therefore, EDC Defendants have confused the elements of these two different claims and have failed to plead the elements of the claim they attempt to assert, namely, interference with actual business relationships. In this regard, everything about Counterclaim Counts IV and V point to such a claim (see especially ¶¶ 57, 58, 63, 64), not to a claim for interference with prospective business relations.

EDC Defendants' argument that they should be allowed to develop their counterclaim in discovery should be rejected for at least two reasons: (1) such an argument is based on case law relating to a claim for interference with prospective business relations, not actual relations, and (2) EDC Defendants are in a position to know if any of their actual business relationships have been harmed, as they allege in conclusory fashion, but without naming names.

For these reasons and the reasons set forth in Philips' opening brief, the EDC Defendants have not pleaded an existing business relationship between itself and a third party, and therefore Counterclaim Counts IV and V should be dismissed.

## 2.    EDC Defendants Misconstrue Philips' "Intent" Argument

The EDC Defendants also contend that they can maintain a claim for tortious interference with business relations because, under New York law, Defendants need only allege that Philips

intended to take the actions that resulted in the interference, with the knowledge that the interference is substantially certain to occur as a result of its actions. (Dkt. 31 at 11). This argument misses Philips point, and is not responsive. Philips' argument is not about the proper degree of intent that EDC Defendants must allege (e.g., whether or not malice must be alleged). Philips' argument is that EDC Defendants failed to plead the second element of a tortious interference claim in both Counterclaim Counts IV and V, namely, that Philips knew of specific EDC Defendants' customer relationships identified under the first element and intentionally interfered with them. (See Philips' opening brief at 15-16)

EDC Defendants' Counts IV and V suffered this same defect in their prior incarnations in Cinram's pleadings. As described in Philips' opening brief, Philips made the same arguments in its motion to dismiss Cinram's counterclaims, EDC Defendants copied Cinram's counterclaims, and EDC Defendants failed to provide any specifics when they asserted the same counterclaims that Cinram has now failed to state twice. This can only mean that EDC Defendants are incapable of alleging such facts, and therefore Counterclaim Counts IV and V should be dismissed with prejudice.

## III.    CONCLUSION

For these reasons and the reasons set forth in Philips' opening brief, Philips respectfully urges this Court to grant Philips' Motion to Dismiss Counterclaim Counts III, IV, and V, with prejudice.

Date:   August 25, 2008

/s/ Samuel C. Bass
Vince P. Kovalick        (*pro hac vice*)
John F. Hornick          (*pro hac vice*)
Samuel C. Bass           (*pro hac vice*)
Ali  I. Ahmed
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001-4413
Tel: (202) 408-4000
Fax: (202) 408-4400

Edward D. Johnson
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Fax: (650) 331-2060

Christopher J. Houpt
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2380
Fax: (212) 849-5830

*Attorneys for Plaintiffs*
*Koninklijke Philips Electronics N.V. and*
*U.S. Philips Corporation*

12

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of August, 2008, a copy of the foregoing

**<u>KONINKLIJKE PHILIPS ELECTRONICS N.V.'s AND U.S. PHILIPS</u>**

**<u>CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF THE MOTION TO</u>**

**<u>DISMISS PATENT MISUSE AND TORTIOUS INTERFERENCE COUNTERCLAIMS</u>**

was electronically filed with the Clerk of the Court using the CM/ECF system, which will notify

the following attorneys for C&D Defendants of such filing:

Ivan Kavrukov
William E. Pelton
Tonia A. Sayour
Gregory J. Carbo
COOPER & DUNHAM LLP
1185 Avenue of the Americas
New York, NY 10036


*/s/ Samuel C. Bass*

13